DECLARATION OF ERIC GUERRERO

1.  My name is Eric Guerrero. I am over the age of 21 years, of sound mind, capable of making this declaration, and have personal knowledge of the facts stated herein. I am currently employed as a Deputy Division Director of the Correctional Institutions Division (CID), a division of the Texas Department of Criminal Justice (TDCJ) located in Huntsville, Texas. I have worked for TDCJ for 27 years, and I was appointed to this position on January 1, 2020. I began my career as a Correctional Officer and promoted through the ranks to Senior Warden in 2009 at the Glossbrenner unit. In addition to my work at the Glossbrenner Unit, I have held the position of Senior Warden at the Lopez State Jail/Segovia Unit and Wallace/Ware/W3 work camp. I was promoted to Region VI Director in May 2013 prior to advancing to the position of Director of Correctional Training and Staff Development in 2016. In January 2020, I was selected as a Deputy Division Director. In this role I was previously responsible for technical and operational support to correctional facilities in Region II, Region V, and Region VI. In this role, I also provided oversight to Plans and Operations, the Fusion Center, Security Threat Group Management Office, Safe Prisons Program, Disciplinary Coordination, Security Operations and Mail System Coordination Panel. I currently provide technical assistance and operational support to administration and correctional facilities in Region I and Region II and the area of Laundry, Food and Supply.

2.  I have been asked to provide information and context regarding TDCJ volunteer programs and violations of TDCJ and program rules committed by volunteers who have been approved to enter TDCJ facilities and prison units.

3.  In the last three fiscal years (FY2019 – FY2021)—September 1, 2018, through August 31, 2021—there were 340 incidents involving volunteers that caused their integrity to be questioned; hindered security; or demonstrated their inability to abide by the rules. Examples of these incidents ranged in severity from establishing inappropriate relationships with inmates to dressing inappropriately or corresponding with inmates.

    a.  FY2019 (September 1, 2018, through August 31, 2019) – 272 incidents.

    b.  FY2020 (September 1, 2019, through August 31, 2020) – 48 incidents.

    c.  FY2021 (September 1, 2020, through August 31, 2021) – 20 incidents.

4.  Of these 340 incidents:

    a.  There were 22 known incidents that involved volunteers bringing items deemed to be illegal or contraband, including illegal substances, cologne, jewelry, and love letters, into TDCJ prison units.

      b.     On 30 occasions, volunteers inappropriately deposited funds into an inmate's commissary account, or were found mailing or delivering money to an inmate.

      c.     Volunteers also attempted to visit inmates during regular visitation on 17 occasions. In addition, visitors would remove themselves from an inmate's approved visitation list and become approved volunteers, so they could spend more time and have in-person contact with an inmate in the prison chapel.

      d.     There were 45 incidents where volunteers established inappropriate relationships with inmates, which threaten the safety and security of TDCJ prison units. Examples include:

      (i).     A female volunteer who was communicating with inmates who were incarcerated at the same prison unit where she volunteered. The content of these emails was deemed inappropriate because the female volunteer discussed her personal business and offered to communicate with an inmate's family members to obtain contraband items the female volunteer could bring into the TDCJ prison to give to the inmate;

      (ii).     An approved female volunteer began accepting kites—letters or notes—from an inmate and failed to notify her supervisors. She kept several kites and, when confronted, she stated that she did not intend to develop feelings for the inmate, but "somehow" she did;

      (iii).     A volunteer pastor failed to declare a relationship with an inmate assigned to a unit and/or other family members. The pastor cared for an inmate's mother before her death, and he intervened on behalf of the inmate's children to offer all that he could to ensure the children would receive the best care under very austere times; and

      (iv).     A Certified Volunteer Chaplain Assistant (CVCA) initiated a relationship with an inmate's wife via Social Media. Through that initial contact, the CVCA and the inmate's wife met at a pre-arranged site to talk, and the CVCA agreed to keep in touch with her.

5.     Also 66 incidents involved volunteers engaging in conduct to hinder security procedures. For example, an off-duty, male state employee served as an approved TDCJ volunteer. His wife was employed by TDCJ as a Chaplain, and he attempted to circumvent the search process by using his spouse's role as a TDCJ-employed Chaplain. At that time, TDCJ employees were not searched when entering a prison unit, but volunteers were subject to a search. Other examples of conduct by approved volunteers to evade or hinder security procedures in FY19 included writing letters to

inmates, bringing stamps to inmates, and taking and mailing letters for inmates to avoid the search of inmate mail—all of which violate TDCJ security procedures.

6. The remaining 160 volunteer violations in FY 2019 – FY 2021 involved various incidents, including delivering messages from one inmate to another inmate or from an inmate to another person, failure to follow staff requests, contacting an inmate's victim, and removing items from a prison unit without approval.

7. In addition to these 340 unit-based violations and incidents, 45 approved volunteers were arrested, which calls into question the volunteer's integrity and, if the arrest results in a conviction, usually results in their removal from the volunteer program.

8. TDCJ has seen a marked decrease in the number of incidents involving volunteers during the COVID-19 pandemic.

9. The majority of these 340 incidents occurred prior to the State of Texas issuing a disaster declaration for COVID-19 on March 13, 2020. On that date, TDCJ implemented a visitation lockdown across all TDCJ units. TDCJ lifted the visitation lockdown and resumed limited volunteer activity on March 15, 2021.

10. From March 13, 2020, to March 15, 2021, TDCJ allowed only CVCAs to visit the prison units. And, to help prevent the spread of COVID-19, each CVCA was limited to visiting only one prison unit.

11. During the lockdown, there were only 37 security violations involving volunteers—some of which involved CVCAs, and some of which involved other approved volunteers.

12. From March 15, 2021—the date the lockdown was lifted and limited volunteer activity resumed—until August 31, 2021, there have been only 10 security violations involving volunteers.

Pursuant to 27 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 20, 2021, in Huntsville, Texas.

_____
Eric Guerrero