IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BARBEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 4:21-cv-03077 |
| vs. | § | |
| BRYAN COLLIER, Executive Director, | § | |
| Texas Department of Criminal Justice | § | |
| Huntsville, Texas | § | |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | (Death Penalty Case) |
| Division, Huntsville, Texas | § | |
| | § | |
| DENNIS CROWLEY, Warden, Texas | § | Mr. Barbee is scheduled to be |
| Department of Criminal Justice, | § | Executed on October 12, 2021 |
| Huntsville Unit, | § | |
| Huntsville, Texas, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR STAY OF EXECUTION.**

This is a response to Defendants' opposition to Plaintiff Stephen Barbee's motion for a stay of execution (hereafter, "Opposition"). Mr. Barbee, a devout Christian, is scheduled to be executed on October 12, 2021. On September 21, 2021, he filed a complaint under 42 U.S.C. § 1983, alleging that the State of Texas intends to execute him in a manner that unconstitutionally burdens his religious exercise under the First Amendment to the United States Constitution as well as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Mr. Barbee's § 1983 complaint alleges that the First Amendment and RLUIPA require the Texas Department of Criminal

-1-

Justice ("TDCJ") to allow his approved spiritual advisor to pray audibly in the execution chamber and place his hands on Mr. Barbee in order to administer a blessing as he is executed, in accordance with Mr. Barbee's Pentecostal faith. On September 28, 2021 Plaintiff filed a motion for a stay of execution (ECF No. 1); on October 1, 2021, Plaintiff filed a motion to expedite briefing on the motion for a stay (ECF No. 7); and on October 4, 2021 Defendants filed an opposition to the stay motion. (ECF No. 9).

**I. Introduction**.

The State urges this Court to allow the execution of Mr. Barbee under conditions that soon may be held to be unconstitutional in the pending Supreme Court case of *Ramirez v. Collier, et. al*, No. 21-5592, 2021 WL 4129220 (U.S. Sept. 10, 2021). The cert grant in *Ramirez* addresses the following questions:

> 1. Under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc–5, and Free Exercise Clause, does the State's decision to allow petitioner's pastor to enter the execution chamber, but forbid the pastor from laying his hands on his parishioner as petitioner dies, substantially burden the exercise of petitioner's religion, so as to require the State to justify the deprivation as the least restrictive means of advancing a compelling governmental interest?
> 2. Under RLUIPA and the Free Exercise Clause, does the State's decision to allow petitioner's pastor to enter the execution chamber, but forbid the pastor from singing prayers, saying prayers or scripture, or whispering or otherwise vocalizing prayers or scripture substantially burden the exercise of petitioner's religion, so as to require the State to justify the deprivation as the least restrictive means of advancing a compelling governmental interest?

*Ramirez v. Collier, et al.*, Brief for Petitioner, at i.

The State opposes Mr. Barbee's request for a stay of execution on three grounds: (1) first, because the State alleges that Mr. Barbee failed to exhaust his administrative remedies, thereby precluding any relief on the merits; (2) second, because Mr. Barbee did not raise his claim until after

the Supreme Court stayed the *Ramirez* execution; and (3) third, that, even if TDCJ's policy does substantially burden Mr. Barbee's religious exercise, it is the least restrictive means of furthering TDCJ's compelling interests; therefore, it satisfies strict scrutiny, as the RLUIPA requires.

But all three arguments fail. Contrary to the State's arguments, Mr.Barbee is entitled to a stay under the four-factor test of *Nken v. Holder*, 556 U.S. 418 (2009), because he has shown a high likelihood of success on the merits of his § 1983 claim, including meeting the requirements under the Prison Litigation Reform Act necessary to surmount the affirmative defense that he failed to exhaust his administrative remedies. He has also shown that TDCJ's restrictions on spiritual advisors in the chamber substantially burden his religious exercise, and that the restrictions cannot withstand strict scrutiny, as the RLUIPA requires. He has also met the concomitant burdens, under *Nken*, of demonstrating that he would be irreparably harmed absent a stay, that the State would not suffer substantial harm, and that the public interest weighs in favor of a stay. The equities favor Mr. Barbee, and his religious-liberty interests are not "dilatory" or "speculative." It is the State rather than Barbee who has prolonged litigation of this issue, by promulgating multiple, inconsistent policies related to religious-liberty requests from condemned persons.

RLUIPA and its sister act, the Religious Freedom Restoration Act (RFRA) provide "very broad protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)). The substantive standard under both RLUIPA and RFLA is the general rule that "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person 1) is in furtherance of a compelling governmental interest; and 2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). At this stage of the litigation, the

entitlement to a stay, it is not Barbee's burden to disprove that the State is using its least restrictive means. It is the State's burden that its policy uses the least restrictive means and therefore satisfies RLUIPA's strict scrutiny standard. The State has not met that burden here.

**II. Mr. Barbee has not been dilatory in asserting his religious rights under RLUIPA.**

The State's initial argument as to the appropriateness of a stay, after many irrelevant pages reciting the alleged facts of the trial and post-conviction proceedings (Opposition at 5-12), is that "Barbee's dilatoriness requires the summary denial of his stay motion." (Opposition at 17-22). Much of that argument is contrary to the facts of this case.

First, the State asserts that Barbee should have challenged the current protocol on April 21, 2021 or even earlier, in 2019. (Opposition at 20). Of course, the current protocol did not exist in 2019. Yet even the newly-changed policy of April 2021 did not expressly bar audible prayer or touching. Instead, the policy provides only that spiritual-advisor behavior that is "disruptive to the execution protocol shall be cause for immediate removal." ECF. No. 1, Ex. B, 2021 Execution Protocol at 10. Even if he had given notice that expressly barred these acts, Mr. Barbee had no reason to challenge the protocol in April, as his execution was not ordered until July 6, 2021.

As the State admits (Opposition at 13-16), TDCJ's policies have often changed and changed rapidly. *Murphy v. Collier*, 942 F.3d 704, 708 (5th Cir. 2019) (reflecting that TDCJ changed its execution protocol within five days after a Supreme Court ruling that it was unconstitutional). Mr. Murphy also filed his 1983 suit much later than Mr. Barbee, only two days before his execution, yet the Supreme Court granted certiorari. ("The TDCJ argues that Murphy's claim is untimely. We made the mistake of agreeing with the TDCJ on this point in March based on Murphy's original complaint, in which he made his request for religious accommodations to the State one month before his

scheduled execution and filed his § 1983 suit two days before his execution. The Supreme Court disagreed.") *Murphy*, 942 F.3d at 708.

Until an execution date is set and becomes imminent, condemned individuals in Texas can have no reasonable expectation of being executed under any particular policy. Even if he knew about the change of policy in April, the State fails to explain why Barbee should have challenged an execution protocol before he knew he was scheduled for execution. Even Mr. Ramirez, who was granted a stay by the Supreme Court, did not file any legal claim until four weeks before his scheduled execution. *Ramirez v. Collier*, No. 4:21-cv-02609, ECF No. 1 (Complaint filed August 10, 2021), and he was granted a stay by the Supreme Court.

The State has only been threatening to execute Mr. Barbee since July 6 of this year. Since then, Mr. Barbee has taken prompt action to secure counsel and funding that would have allowed him to discover and act on the new TDCJ protocol. On July 20, 2021, undersigned counsel moved the trial court for appointment in light of the setting of an execution date. *Texas v. Barbee*, No. 1004856 (213th Judicial District Court, Tarrant County Texas). When no action was taken on that motion, Mr. Barbee renewed his motion for appointment of counsel on August 24, 2021, and this time the motion was unopposed.[1] To this day, the trial court has not ruled on those motions and Mr. Barbee has proceeded for the last two-and-a-half years without appointed counsel, and without court-funded expert and investigative resources that would have enabled him to act in the manner the State says he should have acted.

The State claims that Mr. Barbee's alleged dilatoriness "deprives this Court of the

---

[1] That renewed motion was based mainly on the recent holding of the Fifth Circuit in *Storey v. Lumpkin,* 8 F.4th 382 (5th Cir. 2021) on August 6, 2021, which held that undersigned counsel's current federal appointment cannot cover state subsequent proceedings.

opportunity to permit factual development and then consider the merits of his claims." (Opposition at 18). Not so, as the merits of the claim are not being litigated now, only a stay motion that would permit consideration of the underlying merits. While the State asserts that Mr. Barbee chose not to "take that path at all" [filing earlier], the State has failed to show that Mr. Barbee was notified of the revised policy, even after a date was set, which would have allowed him to make a choice. Even more telling, the April 21, 2021 policy made no mention of the new bar on the actions of the religious advisor. (ECF No. 1, Ex. B).

Even so, Mr. Barbee has shown that well before Mr. Ramirez was granted a stay of execution on September 8, 2021, he requested a religious advisor in the chamber who would be allowed to pray aloud and lay on hands for spiritual comfort. *See* ECF No. 1, Ex. E, Mr. Barbee's declaration of August 20, 2021. When his designated advisor, Ms. Nancy Cearly, who is over 90 years old, notified Mr. Barbee she could not attend the orientation or the execution, Mr. Barbee asked for a new advisor, Mr. Barry Brown. Any "dilatoriness" after the setting of an execution date was entirely in the hands of the State and the prison system, as they had complete control over the handling of the grievance forms.

**III. Mr. Barbee has met the "substantial burden" test.**

The State attacks and denigrates the sincerity of Mr. Barbee's religious beliefs in attempting to show that he has not made a strong showing that he will succeed on the merits. (Opposition at 28-33, calling them "lacking a kernal of religious sincerity," a "pretext," "impermissibly driven." and demonstrating his "insincerity"). The State's personal attacks and blinkered view of Mr. Barbee's beliefs is limited to his attempts to secure a meaningful religious advisor while being executed, but ignores the rest of his well-documented long-held sincere religious beliefs. Mr. Barbee is a devout

Christian and has been active in the Pentecostal church since childhood, including teaching Sunday School classes and was a church leader with his wife. ECF No. 1, Exs. D, H. The laying on of hands—a symbolic act in which religious leaders place their hands on a person in order to confer a spiritual blessing—is an integral part of Mr. Barbee's Pentecostal faith. [*Id.*] Jennifer Cherry, Mr. Barbee's niece, has stated "[i]f this is not allowed him, if and when he goes on to be with the Lord, it would be detrimental to his mental health, peace of mind and belief system at the time of his passing." *Id.* Ex. H. As Mr. Barbee has stated, it is important for him to have an advisor there with him "to pray with me at the time of my death in the chamber, if or when I reach such time. It's the words of a minister that matters, especially when it's written in the Bible that two or more should pray together. And with that Faith, I believe." *See* ECF No. 1, Ex. E, Declaration of Stephen Barbee, August 20, 2021.

This showing meets the RLUIPA threshold "substantial burden" test. *Holt v. Hobbs*, 574 U.S. 352, 358 (2015). This inquiry has two components: first, a prisoner's accommodation request "must be sincerely based on a religious belief and not some other motivation." *Holt*, 574 U.S. at 360-361. Second, "RLUIPA proscribes only government actions that substantially burden religious exercise." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1325 (10th Cir.) (Gorsuch, J, concurring), cert. denied, 562 U.S. 967 (2010). Here, Mr. Barbee has asserted that, in accordance with his Pentecostal faith, both audible prayer and the laying on of hands are integral to his beliefs. These are important beliefs, implicating profound spiritual issues, whose observance fits within RLUIPA's definition of "religious exercise." 42 U.S.C. 2000cc-5(7)(A).

In a further attempt to denigrate Mr. Barbee's religious beliefs (his "true motive is to delay his execution by any means") the State points to Mr. Barbee's other grievance regarding a claim

raised in his subsequent state application as to his severe lack of range of motion in both arms and his inability to straighten his arms and lie on the gurney palms-up, per the normal procedure. *Ex parte Barbee*, WR-71,070-04, at 39-65. (Opposition at 30). Forcing him to do so would amount to torture. Despite being well aware of Mr. Barbee's condition and physical limitations for many years, the Texas Department of Criminal Justice has refused to disclose whether they have made any accommodations or modifications to the execution protocol in order to prevent the infliction of cruel and unusual pain and suffering on Mr. Barbee in violation of the Eighth Amendment. The State sees the raising of this additional constitutional infringement as merely another dilatory tactic. Instead, it is another sign of TDCJ's complete indifference to Mr. Barbee's right to be executed in a constitutional manner, the same indifference shown in this claim.

**IV. The Court is not bound by the Fifth Circuit's decision in *Ramirez*.**

In Section II(B) the State argues that this Court is bound by the Fifth Circuit's precedent in denying a stay in Mr. Ramirez's case, *Ramirez v. Collier*, 10 F.4th 561 (2021). (Opposition at 24-26). Not so. This matter involves Mr. Barbee's entitlement to a stay, and a stay is different from a categorical rule of law, in that it involves different facts in different cases.

Contrary to the State's assertion, the Fifth Circuit opinion in *Ramirez* does not preclude this Court from weighing the *Nken* factors differently in Mr. Barbee's case than the district court and Fifth Circuit did in Mr. Ramirez's case. Rather, this Court must weigh the *Nken* factors in light of the facts and circumstances particular to Mr. Barbee's case, which includes the September 8 grant of a stay and writ of certiorari in *Ramirez v. Collier et. al.* Mr. Barbee has shown a higher likelihood of success on the merits of his underlying § 1983 claim pertaining to his spiritual advisor than Mr. Ramirez initially could have shown. The Supreme Court's recent grant of certiorari in *Ramirez*, the

merits brief Mr. Ramirez has filed in support, and the 13 briefs of *amicus curiae*[2] filed in support of Mr. Ramirez or of neither party, make it clear that Mr. Barbee has shown, at a minimum, a "reasonable probability" that his § 1983 lawsuit is "sufficiently meritorious" to warrant a stay. *Barefoot v. Estelle*, 463 U.S. 880, 885 (1983), superseded on other grounds by 28 U.S.C. § 2253(c)(2).

**V. Exhaustion of administrative remedies.**

In Section II (C) the State argues that Mr. Barbee should be denied a stay because he has not exhausted his administrative remedies. (Opposition at 26-28). That question is relevant to the underlying § 1983 claim, not to the entitlement to a stay. Indeed, the Supreme Court has posed the question of whether Mr. Ramirez has exhausted his administrative remedies as their first question following their grant of certiorari. *Ramirez v. Collier, et. al*, No. 215592, Order of Sept. 10, 2021. It is not yet determined what qualifies for exhaustion of remedies under the RLUIPA, what if any grievances must be submitted, and what they must request in order to exhaust those remedies, and to what extent the prison's total control over the submission of the grievances and the timing of their answer or denial will weigh on the State's assertion of unexhausted administrative remedies.

---

[2] In the Supreme Court litigation in *Ramirez v. Collier*, *et. al.*, No. 21-5592, thirteen amicus briefs were filed on in support pf petitioner or in support of neither party. They include: Brief of the United States in Support of Neither Party (but taking the position that "[a]lthough the record below was limited, it suggests that [Ramirez] is likely to succeed (at least in part) on his RLUIPA challenge to Texas's categorical ban on audible prayer and laying of hands by a spiritual adviser in the execution chamber.'); Brief from the First Liberty Institute; Brief from the Religious Freedom Foundation, et. al.; Brief from the the Protect the First Foundation; Brief from the Alliance Defending Freedom; Briefs filed on behalf of former prison officials, spiritual advisors and former corrections officers; Brief from the Christian Legal Society; Brief from the Becket Fund for Religious Liberty; Briefs filed by religious liberty scholars; Brief from the United States Conference of Catholic Bishops and Texas Conference of Catholic Bishops; and a brief filed by various scholars of the PLRA and Prison Grievance Systems.

Even so, both Barbee's and the State's evidence show that Mr. Barbee has submitted his Step One Grievance on Sept. 15, 2021 (ECF No. 1, Ex. I) and Step 2 on Sept. 26, 2021 (ECF No. 10-4, Ex. E, showing Step 2 grievance submitted by Mr. Barbee on Sept. 26, 2021). On Sept. 15, 2021 Mr. Barbee's counsel submitted an inquiry to TDCJ counsel as to the spiritual advisor, and on Sept. 16, 2021, TDCJ counsel replied, refusing to divulge what policies would be implemented and referring counsel to the prison grievance process. (ECF No. 1, Ex. I). If Mr. Barbee only learned of the complete prohibition on audible prayer through his spiritual advisor well after his execution date was set, then an administrative remedy could be considered "unavailable." *Ross v. Blake*, 578 U.S. 632, 644 (2016).[3]

**VI. Mr. Barbee has made a strong showing that he will succeed on the merits**.

In Section II (D) the State avers that the new regulations do not violate RLUIPA if they are the "least restrictive means" of furthering a compelling governmental interest, citing *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005). (Opposition at 32-33). The asserted governmental interest is "security." (Opposition at 33-36). Despite the litany of horror stories cited, the State's own evidence

---

[3] It is therefore disingenuous for the State to assert that Mr. Barbee was remiss in failing to object to TDCJ's restrictions on audible prayer and physical touch as early as April 2021, when TDCJ itself did not announce these restrictions until, at the very earliest July 2, 2021 when a representative of TDCJ typed, in response to a grievance that John Henry Ramirez had filed, "A spiritual advisor is not allowed to touch an inmate while in the execution chamber," (Ramirez, No. 4:21-cv-022609, ECF No. 4 at 38-39). On August 10, 2021, Mr. Ramirez filed a RLUIPA complaint. That is the first date that TDCJ's "No Contact" policy can reasonably be said to have come into existence, for the purposes of attributing knowledge of this policy to Mr. Barbee. And, the first time TDCJ announced its gratuitous restriction on audible prayer by spiritual advisors in the chamber was August 19, 2021, via e-mail correspondence with counsel for Mr. Ramirez. A separate question remains whether Mr. Barbee can reasonably have been expected to have been "on notice" of these additional restrictions simply by virtue of the fact that TDCJ communicated them to Mr. Ramirez; however, they are the earliest dates that the policies complained of in Mr. Barbee's § 1983 complaint can even be proven to have been in existence.

shows that "TDCJ has shown a marked decrease in the number of incidents involving volunteers[4] during the COVID-19 pandemic" and "[f]rom March 15, 2021...until August 31, 2021, there have been only 10 security violations involving volunteers." See ECF 10, Doc. 10-1 at 3, Declaration of Eric Guerrero. And in *Gutierrez v. Saenz*, 141 S. Ct. 127 (2020), where a Texas inmate challenged the new "no spiritual advisor" policy, on remand the district court found that "the extensive evidence submitted by the [p]arties does not demonstrate that serious security concerns would result from allowing inmates the assistance of a chosen spiritual advisor in their final moments." *Gutierrez* Remand Op. 29. Mr. Barbee's chosen spiritual advisor, Pastor Brown, has already assisted in the recent June 30, 2021 execution of John Hummel, without incident. ECF. No. 1 Ex. F. The State has not and cannot articulate a specific, security-related reason why Pastor Barry Brown cannot audibly pray or lay hands on Mr. Barbee.

The State asserts that "TDCJ is not forcing or enticing Barbee to do anything...it does not force an inmate to do what his religious tenets forbid. " (Opposition at 31). Yet courts have widely recognized that RLUIPA applies to prison policies that "prevent[] the plaintiff from participating in an activity motivated by a sincerely held religious belief" and important to the plaintiff's religious exercise. *Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014) (Gorsuch, J.); *also see, e.g., Cavin v. Michiganm Dept't of Corr.,* 927 F.3d 455, 458-459 (6th Cir. 2019) (group worship); *Ware v. Louisiana*, 855 F.3d 263, 267, 269 (5th Cir. 2017) (dreadlocks). The Supreme Court's RLUIPA cases regarding spiritual advisors in the death chamber are inconsistent with an interpretation of "substantial burden" that would include only forced violations. *See Gutierrez v. Saenz*, 141 S. Ct. 127 (2020) (staying execution based on spiritual-advisor-presence claim); *Dunn v. Smith*, 141 S. Ct.

---

[4] Spiritual advisors designated by the inmates are classified as "volunteers."

725 (2021)( declining to vacate injunction halting execution based on similar claim).

**VII. Mr. Barbee will suffer irreparable harm.**

In Section II(E) the State argues that Mr. Barbee will not suffer irreparable harm because previous measures were even more restrictive (Opposition at 13-16) and other measures are in place that allow contact with the advisor. (Opposition at 40-41). It is undisputed that the new policy categorically forbids the audible prayer and laying on of hands that Mr. Barbee has shown are important parts of his religious practice and would thus impose a substantial burden on the exercise of his religion. ECF No. 1, Exs. D, E, F, H. "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise" of a particular person, "not whether the RLUIPA claimant is able to engage in other forms of religious exercise" or the State was previously even less accommodating of others. *Holt*, 574 U.S. at 361-362.

**VIII. The State has admitted in similar cases that it has a strong interest in staying the executions pending the outcome of the *Ramirez* litigation.**

In section II(F), the State agues that "the State and the public have a strong interest in seeing the state court judgment carried out." (Opposition at 41-43). This argument directly contradicts the State's position in two recent cases that are based on the same RLUIPA argument. As discussed in Plaintiff's motion to expedite briefing (ECF No. 7 at 2-3), there has been a recent vacating of the execution dates in *State v. Gutierrez*, No. 98-CR-1391 (Cameron County)[5] on September 15, 2021, and *State v. Hernandez,* No. 20060D05825 (El Paso County) on September 30, 2021[6] based on the

---

[5] *See* Appendix A to ECF No. 7, State's motion to vacate execution date and Order signed Sept. 15, 2021.

[6] ECF No. 7, Appendix B, joint motion to vacate execution date, and Order signed Sept. 30, 2021

pending Supreme Court litigation in *Ramirez*. In the *Gutierrez* motion, the State's rationale was "[a]s the *Ramirez* matter may be dispositive of any issue related to Gutierrez's religious liberty claim, *it is in the best interest of the State, and the family of the victim of Gutierrez's crimes, that his execution be delayed*." ECF No. 7, App. A, State's Motion at 3.3 (page 5) (emphasis added). Similarly, in the *Hernandez* joint motion, the motion states that "*As the Ramirez matter may be dispositive of any issue related to Hernandez's religious liberty claim, it is in the best interest of justice and the State and the Defendant, that his execution be delayed*." ECF No. 7, App. B, Joint Motion at 3.2 (page 4) (emphasis added). Mr. Hernandez's religious liberty claim was much less advanced than Mr. Barbee's, as he was only "in the process of exhausting the administrative remedies of the prison in preparation for his own legal action to protect his religious rights." *Id*. In the *Gutierrez* and *Hernandez* matters, it was not only in the State's and the public's interest to vacate the execution date, but also in the best interest of the family of the victim and in the best interest of justice for the executions to be delayed because the Ramirez matter may be dispositive of their religious liberty claims. But here, the State asserts that "[t]he public's interest is not advanced by postponing Barbee's execution any further." (Opposition at 42). Defendants fail to explain why it is not in the State's interest to delay Mr. Barbee's October 12, 2021 execution for precisely the same reason that Mr. Gutierrez's and Mr. Hernandez's were stayed.

DATED: October 6, 2021.

       Respectfully submitted,

       <u>s/s A. Richard Ellis</u>
       A. Richard Ellis
       Texas Bar No. 06560400
       75 Magee Avenue
       Mill Valley, CA 94941

(415) 389-6771
FAX (415) 389-0251
a.r.ellis@att.net

**CERTIFICATE OF ELECTRONIC SERVICE**

I, A. Richard Ellis, do hereby certify that I electronically filed the foregoing pleading with the Clerk of the Court for the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court on October 6, 2021. I have also served Defendant's counsel of record for matters pertaining to the stay motion, Mr. Stephen Hoffman of the Office of the Attorney General, State of Texas via e-mail at stephen.hoffman@oag.texas.gov. I have also served Defendant's counsel of record for all matters in the case except those relating to the stay of execution, Ms. Leah O'Leary, Deputy Chief, Law Enforcement Defense Division, Office of the Attorney General of Texas at Leah.OLeary@oag.texas.gov.

*/s/ A. Richard Ellis*
A. RICHARD ELLIS
Attorney for Plaintiff Stephen Barbee
Texas Bar No. 06560400
75 Magee Avenue
Mill Valley, CA 94941
(415) 389-6771
FAX (415) 389-0251
a.r.ellis@att.net