Case 4:21-cv-03077   Document 14   Filed on 10/07/21 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
October 07, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BARBEE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-3077 |
| | § | |
| BRYAN COLLIER | § | |
| and | § | |
| BOBBY LUMPKIN | § | |
| and | § | |
| DENNIS CROWLEY, | § | |
| | § | |
| Defendants. | § | |

**ORDER STAYING EXECUTION**

On February 23, 2006, a jury in Tarrant County, Texas convicted Stephen Dale Barbee of capital murder for killing his pregnant girlfriend and her seven-year-old son. Pursuant to the jury's answers to Texas' special issue questions, the convicting court sentenced him to death. Barbee has unsuccessfully availed himself of state and federal post-conviction remedies. The State of Texas has set Barbee's execution for October 12, 2021.

On September 21, 2021, Barbee filed this lawsuit under 42 U.S.C. § 1983 claiming that Texas will carry out his execution in a manner that will violate his religious rights. (Docket Entry No. 1). Specifically, Barbee complains that the Texas Department of Criminal Justice (TDCJ) will prevent his chosen spiritual advisor from having physical contact and praying with him during the execution process. Barbee argues that these limitations will violate the First Amendment's Free Exercise Clause and substantially burden the exercise of his religion in violation of the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.

With the fast-approaching date, Barbee has moved for a stay of execution. (Docket Entry No. 6). The Defendants oppose any stay. (Docket Entry No. 9). For the reasons discussed below, the Court stays Barbee's execution.

**I.     Background**

Texas adopted lethal injection as its sole method of execution in 1982. In 1985, Texas promulgated an official execution policy in which a TDCJ-employed chaplain attended to the condemned inmate's spiritual needs during an execution. During that time, a prison chaplain could have physical contact and pray with the condemned as the execution proceeded. For over thirty years, no inmate asked for an outside spiritual advisor to be present in his execution.

In early 2019, Texas inmate Patrick Henry Murphy sued because TDCJ protocol would not allow the spiritual advisor of his choice—a Pure Land Buddhist priest—in the execution chamber. *Murphy v. Collier*, 4:19-cv-1106 (S.D. Tex.). The United States Supreme Court stayed Murphy's execution on March 28, 2019. *Murphy v. Collier*, 139 S. Ct. 1475 (2019). That same day, Justice Kavanaugh entered a concurring statement which proposed that "there would be at least two possible equal-treatment remedies available to the State going forward: (1) allow all inmates to have a religious adviser of their religion in the execution room; or (2) allow inmates to have a religious adviser, including any state-employed chaplain, only in the viewing room, not the execution room." *Id*. (Kavanaugh, J., concurring). Five days later, TDCJ revised its execution

protocol to exclude all spiritual advisors, even prison-employed chaplains, from the execution chamber.

On September 26, 2019, Ruben Gutierrez filed a civil-rights lawsuit claiming that TDCJ's new policy violated his religious rights by barring his spiritual advisor from the execution chamber. *Gutierrez v. Saenz*, 1:19-cv-185 (S.D. Tex.). The Supreme Court ultimately stayed Gutierrez's execution. Along with the stay, the Supreme Court assigned the District Court a task: "promptly determine, based on whatever evidence the parties provide, whether serious security problems would result if a prisoner facing execution is permitted to choose the spiritual adviser the prisoner wishes to have *in his immediate presence* during the execution." *Gutierrez v. Saenz*, 141 S. Ct. 127, 128 (2020) (emphasis added).

After the submission of evidence on the question of security, the District Court in *Gutierrez* entered an order specifically "finding that the extensive evidence submitted by the Parties does not demonstrate that serious security concerns would result from allowing inmates the assistance of a chosen spiritual advisor in their final moments." *Gutierrez v. Saenz*, 1:19-cv-185 (S.D. Tex.), (Docket Entry No. 124). The Supreme Court subsequently accepted the findings and remanded the *Gutierrez* case for adjudication of claims regarding the presence of a spiritual advisor in the execution chamber. *Gutierrez v. Saenz*, 141 S. Ct. 1260, 1261 (2021).

On April 21, 2021, TDCJ adopted a new execution protocol which, with certain preliminary requirements, will allow an inmate's chosen spiritual advisor to accompany him during an execution. The new protocol gives precise details about the qualifications,

background check, and training of an inmate's spiritual advisor. The protocol also specifies that the spiritual advisor "will be escorted into the execution chamber" and may be "present in the execution chamber." (Docket Entry No. 1, Exh. B).[1] The 2021 execution protocol is silent about a spiritual advisor's role inside the execution chamber. The written policy does not say that a spiritual advisor will have any constraint placed on the spiritual assistance he or she may provide the inmate as the execution proceeds.

TDCJ officials have apparently placed informal limitations on what the advisor may do upon entry to the death chamber. As inmates have submitted their requests for a spiritual advisor to attend their execution, prison officials have sent letters or other communications indicating that they would not allow the spiritual advisor to pray with or touch the inmate as the execution proceeds. Texas inmates have recently filed lawsuits complaining that TDCJ's implementation of its new policy violates their religious rights.

Parallel litigation has arisen in Alabama. One Alabama inmate sued because he wanted his spiritual advisor "to pray with [him], hold his hand, and otherwise touch [him] at the moment of his death." *Smith v. Dunn*, 516 F.Supp.3d 1310 (M.D. Ala. 2021). The Eleventh Circuit entered an order staying the inmate's execution based on his religious-liberty claims. *See Smith v. Commissioner, Alabama Department of Corrections*, 844 F. App'x 286, 295 (11th Cir. 2021). The Eleventh Circuit specifically found that the inmate had made a prima facie showing that the exercise of his religion would be substantially burdened because he "will be unable to hold [his spiritual advisor's] hand and pray with

---

[1] With that change, the District Court recently dismissed Gutierrez's lawsuit because Texas now allows a spiritual advisor's presence in the execution chamber. *Gutierrez v. Saenz*, 1:19-cv-185 (S.D. Tex.), (Docket Entry No. 172).

him in his final moments. This required change in the way [the inmate] carries out his religious practices . . . ." *Smith v. Commissioner, Alabama Department of Corrections*, 844 F. App'x 286, 291 (11th Cir. 2021). The Supreme Court denied Alabama's motion to vacate the stay. *See Dunn v. Smith*, 141 S. Ct. 725 (2021).

The Supreme Court's stay of execution in *Smith* prompted the Alabama prison system to accommodate the inmate's religious requests. The parties subsequently filed a joint motion to dismiss the *Smith* litigation when the prison agreed to allow the "Plaintiff's chosen spiritual advisor into the execution chamber and will permit him to anoint Plaintiff, hold Plaintiff's hand, and pray with him . . . ." *Smith v. Dunn*, 2:20-CV-1026-RAH (M.D. Ala. June 17, 2021) (Order granting Joint Motion to Dismiss, Docket Entry No. 58).[2]

Like Alabama, Texas now allows an inmate's chosen spiritual advisor into the execution chamber. Texas inmates, however, are currently litigating what assistance a spiritual advisor may provide during the execution process. Recently, another Texas death row inmate, John H. Ramirez, sued because of those limitations. While TDCJ had approved Ramirez's request for a chosen spiritual advisor to be by his side, prison officials informed him that his spiritual advisor could neither touch him nor engage in audible prayer during the execution. *Ramirez v. Collier*, 4:21-cv-2609 (S.D. Tex.). The United States Supreme Court recently stayed Ramirez's execution. *Ramirez v. Collier*,

---

[2] The federal government has also allowed physical contact and audible prayer during recent executions. *Brief for the United States as Amicus Curiae Supporting Neither Party*, *Ramirez v. Collier*, No. 21-5592 (US) (filed Sept. 2021), at 24-25.

2021 WL 4077814, at *1 (Sept. 8, 2021). In briefing that the parties will complete by November 1, 2021, the Supreme Court instructed as follows:

> The parties are directed to submit briefs that address whether petitioner adequately exhausted his audible prayer claim under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The parties are also directed to address whether petitioner has satisfied his burden under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) to demonstrate that a sincerely held religious belief has been substantially burdened by restrictions on either audible prayer or physical contact. The parties are further directed to address whether the government has satisfied its burden under RLUIPA to demonstrate its policy is the least restrictive means of advancing a compelling government interest. Finally, the parties [are] directed to address the type of equitable relief petitioner is seeking, the appropriate standard for this relief, and whether that standard has been met here. See *Hill* v. *McDonough*, 547 U.S. 573, 584 (2006) (setting forth a four- factor test for equitable relief). The parties may address other relevant issues, avoiding repetition of discussion in prior briefing.

*Ramirez v. Collier*, 2021 WL 4129220, at *1 (Sept. 10, 2021). In short, the *Ramirez* proceedings may clarify what technical requirements an inmate must meet in filing such litigation, what burden he must satisfy in showing an imposition on his religious worship, whether TDCJ has sufficiently justified its limitation on its new policy, and what relief is available in similar situations.[3]

## II. Barbee's Lawsuit

With that background, Barbee filed this lawsuit on September 21, 2021. (Docket Entry No. 1). Barbee states that he "is a devout Christian and has been throughout his life." (Docket Entry No. 1 at 8). Barbee has designated Barry Brown of the Salvation

---

[3] Given the short time in which Ramirez filed suit before his execution date, the factual record before the district court was sparce, particularly regarding any security interest in limiting physical contact and prayer in the execution chamber. The Supreme Court stayed Ramirez's execution and oral argument will proceed in November, but the Supreme Court is not a trial court. It is unclear how the action currenting pending before the Supreme Court will conclusively resolve the fact-intensive questions involved in deciding a RLUIPA claim. *See Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 795 (5th Cir. 2012) (highlighting the importance of a district court developing the rich factual record necessary to resolve an RLUIPA claim).

Army as his spiritual advisor. (Docket Entry No. 1 at 9). Barbee wants Mr. Brown "to be physically present in the chamber, to audibly pray and to physically touch Mr. Barbee in order to confer ministrations and a spiritual blessing upon him at the time of his death." (Docket Entry No. 1 at 9).

It appears that Mr. Brown may have been the first one to inform Barbee on September 7, 2021, that TDCJ would not allow physical contact and audible prayer during his execution. (Docket Entry No. 1 at 10). On September 15, 2021, Barbee sought an accommodation of his religious practices through the prison grievance system. "The Texas prison system provides a two-step process for filing grievances, and a prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement." *Bangmon v. Alexander*, ___ F. App'x ___, 2021 WL 3477490, at *3 (5th Cir. 2021). On September 16, 2021, Barbee's step one grievance was denied as follows: "At this time the spiritual advisor is not allowed to touch the inmate or speak out loud once inside the execution chamber. No further action is warranted at this time." (Docket Entry No. 1 at 10). Barbee's step two grievance was pending at the time he filed the lawsuit. (Docket Entry No. 1 at 10).[4]

Barbee filed suit under 42 U.S.C. § 1983 raising two claims: TDCJ's execution protocol violates (1) the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq. ("RLUIPA") and (2) his First Amendment right to Free Exercise of religion by inhibiting his ability to practice his religion. Barbee asks for relief in the form

---

[4] On the same day that TDCJ denied his step one grievance, an individual from the Office of General Counsel-TDCJ informed Barbee's attorney that any complaints about the policy would be addressed only through the prison grievance process.

of a "declaratory judgment that TDCJ's 'No Speaking' and 'No Contact' policies violate Mr. Barbee's rights" under the Free Exercise Clause and RLUIPA. Barbee also requests "[a] preliminary and permanent injunction prohibiting Defendants from executing [him] until they allow his spiritual advisor not only to be present with him in the chamber, but to pray audibly with him and have physical contact with him in order to confer a blessing upon him." (Docket Entry No. 1 at 13). The Court must consider whether to stay Barbee's impending execution so that this lawsuit may go forward.

## III. Analysis

The Defendants' opposition to a stay of execution makes two arguments. First, the Defendants argue that Barbee filed this lawsuit so late that it would be inequitable for the litigation to proceed. Second, the Defendants argue that Barbee has not met the legal standards necessary to stay this execution.

### A. Timeliness

The Defendants argue that the Court should deny the motion to stay because Barbee was dilatory in filing his lawsuit. The Supreme Court has observed that "a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day." *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *see also Bible v. Davis*, 739 F. App'x 766, 770 (5th Cir. 2018) (denying a late-filed lawsuit as a "a dilatory tactic" that "therefore warrants no equitable relief"). The Supreme Court has recognized the "significant" problems created when death-row inmates delay in filing their § 1983 suits, stating that "federal courts can and should protect States from dilatory or speculative suits." *Hill*, 547 U.S. at 585.

The Defendants contend that Barbee filed without diligence because his "lawsuit was brought five months after TDCJ amended its execution protocol to its current form and two-and-a-half months after Barbee's execution was first scheduled." (Docket Entry No. 9 at 1). The Defendants premise their argument, however, on the belief that an inmate would know from the official TDCJ execution protocol that a spiritual advisor could not engage in physical contact and audible prayer in the execution chamber. But the 2021 execution protocol as written does not limit what a spiritual advisor will do in the execution chamber.[5] An inmate reading the 2021 execution protocol would have no reason to believe that TDCJ would prevent his spiritual advisor from praying or having physical conduct in the execution chamber.

Despite the Defendants' argument that they "had no control over when Barbee filed this lawsuit," an inmate cannot sue to remedy a limitation of which he has no notice. (Docket Entry No. 9 at 21). The record to date does not clarify when Barbee should have been aware that TDCJ officials would make the decisions they did. The Defendants have not produced any document or other evidence showing that they informed him about the limitations challenged in this lawsuit when they implemented the 2021 protocol or when Barbee first requested a spiritual advisor. Perhaps Barbee should have been aware when John Henry Ramirez filed a recent similar lawsuit, but even Ramirez himself did not learn about the prohibition on audible prayer until the middle of August. (Docket Entry No. 1, Exhibit C); *see also Ramirez v. Collier*, 4:21-cv-2609 (S.D. Tex.) (Docket Entry

---

[5] The closest the official policy comes to regulating the spiritual advisor's actions is its statement that behavior which is "disruptive to the execution procedure shall be cause for immediate removal." Nothing would alert an inmate that prayer or physical contact could be a form of disruptive behavior.

No. 12). Because the Defendants do not base their limitation on any written policy, Barbee would not know how prison officials would conduct his own execution until they told him.

Because the Defendants based their actions on the opinions of prison officials rather than written policy, an inmate will not know what to expect until so informed. Barbee apparently first learned about the limitations in his own execution only a short time before he filed the instant lawsuit. The Court finds the Defendants' arguments about the timeliness of this lawsuit to be without merit.

### B. Stay of Execution

A full review of the circumstances suggests that a stay of execution is appropriate in this case. While Barbee's briefing regarding a stay mentions both of his claims, the parties' arguments more fully discuss his RLUIPA claim. The Court, therefore, will focus its analysis on whether Barbee has met the stay requirements in the context of the RLUIPA standard. In doing so, however, the Court finds that the same logic would allow for a stay on his First Amendment claim.

#### 1. *Nken* Standard

A prisoner condemned to death, however imminent that death may be, has no automatic entitlement to a stay of execution. *See McFarland v. Scott*, 512 U.S. 849, 858 (1994). "A stay of execution is an equitable remedy that is not available as a matter of right." *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). A court considering a motion to stay an execution must consider the four factors outlined in *Nken v. Holder*, 556 U.S. 418 (2009): "(1) whether the movant has made a showing of likelihood of success on the

merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest." *In re Campbell*, 750 F.3d 523, 534 (5th Cir. 2014) (quotation omitted).

### 2. Likelihood of Success on the Merits

Of the stay-of-execution factors, the likelihood of success on the merits and irreparable harm are "the most critical." *Nken*, 556 U.S. at 434. In evaluating the first factor, "[i]t is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (quotation marks omitted); *see also Texas Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). Courts describe the movant's burden as requiring a "strong" or "substantial" likelihood of success. *See In re Garcia*, 756 F. App'x 391, 396 (5th Cir. 2018); *Sells v. Livingston*, 561 F. App'x 342, 343 (5th Cir. 2014); *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013). The likelihood-of-success factor weighs in Barbee's favor.

The Defendants make three arguments against a stay. First, the Defendants argue that Barbee has not exhausted state remedies, a precursor to relief under civil rights law. Second, the Defendants assert that their interpretation of TDCJ written protocol does not substantially burden Barbee's exercise of his religion. Third, the Defendants argue that the current interpretation of their policy is the least restrictive means of furthering their compelling interest.

Before turning to the Defendants' arguments, however, the Court observes that the *Ramirez* case pending before the Supreme Court will address the precise issues raised by

Barbee's lawsuit. Under circumstances similar to those in the instant lawsuit, the Supreme Court stayed Ramirez's execution and granted *certiorari* review.[6] The Defendants have not identified any meaningful difference between the circumstances that led to a stay in the *Ramirez* case and those in the instant one. The Defendants correctly state the law: "[t]he [Supreme] Court's grant of certiorari in a capital case does not cause us to deviate from circuit law, nor is it grounds for a stay of execution." *Cantu v. Collins*, 967 F.3d 1006, 1012 n.10 (5th Cir. 1992). The Supreme Court, however, has not only granted review of a somewhat-similar issue or comparable constitutional claim it has granted review of identical claims involving identical decisions by the same prison officials as in this case. The Court cannot turn a blind eye to the fact that the Supreme Court will most likely stay this case because of its close kinship with the *Ramirez* case.

Turning to the Defendants' arguments, they first contend that the Prison Litigation Reform Act ("PLRA") bars federal review of Barbee's claims because he did not properly exhaust available administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e(a). The Supreme Court has emphasized that exhaustion of all administrative procedures is mandatory before an inmate can file any suit. *See Jones v. Bock*, 549 U.S. 199, 212 (2007). Requiring inmates to exhaust remedies through the prison grievance process serves to "give[ ] officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson,* 385 F.3d 503, 517 (5th Cir. 2004).

---

[6] The Supreme Court's action in *Ramirez* was consistent with the earlier litigation arising from Alabama which resulted in that State allowing for physical contact and prayer in the execution chamber.

Texas employs a two-step grievance process that first allows a Warden to address problems and then permits an inmate to appeal to TDCJ Central Grievance Office. Barbee filed his prison grievance on September 15, 2021, only a week after first learning from his spiritual advisor about limitations in the execution chamber. According to his pleadings, Barbee filed suit before receiving a denial of his step two grievance. (Docket Entry No. 1 at 10). Because Barbee did not wait to hear that prison officials denied his step two grievance, the Defendants ask this Court to let his execution go forward.

Exhaustion has been a reoccurring theme in the lawsuits challenging Texas' approach to spiritual advisors in the execution chamber. In another case, one court found:

> There is no indication in the record that filing a prison grievance for review by a warden and then administrative staff would be productive when they have no ability to change TDCJ execution protocol. It appears that Murphy has effectively satisfied the spirit of the exhaustion rule. Dismissing this action for failing to file prison grievances when the issues have already been passed upon by the TDCJ director and the state courts would prioritize hollow formality over the religious rights of a man condemned to die soon.

*Murphy v. Collier*, 423 F.Supp.3d 355, 359 (S.D. Tex. 2019). The Fifth Circuit has similarly deemphasized the exhaustion requirement in similar cases, primarily because the Supreme Court has stayed the execution of inmates who have not fully complied with the technical exhaustion requirements. *See Murphy v. Collier*, 942 F.3d 704, 709 (5th Cir. 2019). Because the Supreme Court has explicitly requested briefing on exhaustion in *Ramirez*, the Court finds that it would be inappropriate to deny a stay on that basis at this juncture.

The Defendants' remaining two arguments against a stay contend that Barbee will not experience a substantial burden on the exercise of his religion and that they now employ the least restrictive means of furthering a compelling interest. RLUIPA provides in part that: "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless it furthers "a compelling governmental interest," and does so by the "least restrictive means*.*" *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)). Notwithstanding the Defendants' arguments to the contrary,[7] Barbee's pleadings do not give any reason to doubt his sincerely held religious beliefs. The information before the Court suggests that Barbee will be able to carry his initial RLUIPA responsibility of showing that TDCJ's limitations in the execution chamber substantially burden the exercise of his religion. *See Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004); *see also Smith v. Commissioner, Alabama Department of Corrections*, 844 F. App'x 286, 291 (11th Cir. 2021) (finding a substantial burden in the denial of a similar request). If the Supreme Court thought that TDCJ's limitations on spiritual advisors did not impose a substantial burden on religious exercise, the Supreme Court would not have stayed Ramirez's execution. The Supreme

---

[7] The Defendants argue: "Barbee's plainly dilatory claim cannot satisfy RLUIPA's sincerity prong. If touching and audible prayer in the chamber were important to Barbee, he could have filed suit when the current protocol was adopted—or even during last-minute litigation pertaining to his 2019 execution date. The belated nature of this lawsuit strongly suggests that these practices were not significant to him until he apprehended—after Ramirez's stay—that requesting an accommodation could potentially delay his execution." (Docket Entry No. 9 at 29). The Court declines to accept the inferences proposed by the Defendants. The Defendants cannot persuasively argue that any inmate wanting physical contact or audible prayer should have filed suit when TDCJ enacted its protocol when that written protocol does not contain the limitations at issue in this lawsuit.

Court's stay in *Ramirez* is necessarily a rejection of the Defendants' argument that their limitations do not burden an inmate's religious exercise.[8]

The Court recognizes that TDCJ has a compelling interest in maintaining security, particularly in the context of an execution. Issues of prison security are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence . . . that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974). Courts generally defer to the judgment of prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) ("[W]e have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators . . . ."). Still, the Defendants must prove that their limitations are the least restrictive means of furthering a compelling governmental interest. *See Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016); *see also Sossamon v. Texas*, 563 U.S. 277, 281 (2011). This is an "exceptionally demanding" standard. *Holt*, 574 U.S. at 362.

---

[8] The Defendants argue that they should prevail because they are "not forcing or enticing Barbee to do anything." (Docket Entry No. 9 at 31). Even though they "limit conduct inside the execution chamber," the Defendants argue that they do "not force an inmate to do what his religious tenets forbid." (Docket Entry No. 9 at 31). Under the Defendants' reasoning, a prison may place any restriction on an inmate's religious practice so long as they do not compel any action against religious belief. This understanding of RLUIPA lacks foundation in the statute's text or Supreme Court precedent. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006) (applying comparable RFRA to prohibition of a controlled substance); *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005) (discussing prison regulation of religious outerwear); *see also Ware v. Louisiana Department of Corrections*, 866 F.3d 263 (5th Cir. 2017) (discussing prison regulation involving dreadlocks). When the prison prohibits religious activity, religious exercise is substantially burdened. *See Yellowbear v. Lampert*, 741 F.3d 48, 56 (10th Cir. 2014) (Gorsuch, J.) (stating that "flatly prohibiting Mr. Yellowbear from participating in an activity motivated by a sincerely held religious belief" could impose a substantial burden); *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008) ("[A]n outright ban on a particular religious exercise is a substantial burden on that religious exercise.").

As it now stands, the record is thin on whether the Defendants may be able to meet this burden. The Defendants have supplied a declaration from Bobby Lumpkin, Director of the Correctional Institutions Division of TDCJ. (Docket Entry No. 10, Exh. C). Mr. Lumpkin provides several reasons for the policy: the spiritual advisor may "frustrate the execution" by creating a disruption, may try to stop the execution by pulling IV lines, may hinder the execution team's ability to see or hear the inmate as he dies, may block the witnesses' view of the execution process, and may impede access to the inmate should something go awry with the execution. (Docket Entry No. 10, Exh. C). Yet the record before the Court still provides little information on which to assess whether prison officials have employed the least restrictive means of accomplishing their valid concerns for security.

TDCJ now completely bars a religious accommodation they once permitted, and one which other jurisdictions such as Alabama permit notwithstanding the presence of free-world spiritual advisors in the execution chamber. During the three decades in which TDCJ allowed prison clergy to participate in executions, spiritual advisors would touch and pray with the inmates. Many of the concerns expressed by Mr. Lumpkin existed when TDCJ clergy participated in executions. The information before the Court does not explain how the prison system allowed TDCJ chaplains to touch the inmate and pray while not blocking the sight of the execution team, preventing the witnesses from seeing the procedure, creating too much noise, or standing in the way should an emergency arise.

Other concerns exist whether or not the spiritual advisor could touch the inmate. The record now before the Court is too sparse to explain why the background check, training, and threat of criminal prosecution for a non-prison individual cannot adequately minimize risk, especially in comparison to the minimal execution-specific training formerly given to prison chaplains. These are questions that require factual development and time. And these questions undercut the Defendants' argument that they currently employ the least restrictive means of ensuring security and order.

The Supreme Court in *Ramirez* has instructed the parties to "address whether the government has satisfied its burden under RLUIPA to demonstrate its policy is the least restrictive means of advancing a compelling government interest." *Ramirez v. Collier*, 2021 WL 4129220, at *1 (Sept. 10, 2021). The Court hesitates to make a determinative declaration on a matter currently pending before the Supreme Court. Further, the pleadings suggest that the issues raised by this case are rich and fact-intensive; the record now before the Court is too shallow to sustain the Defendants' blanket prohibition on audible prayer and physical contact. The Court finds that Barbee has met the first *Nken* factor by showing a likelihood of success on the merits.

### 3. Other Factors

The remaining *Nken* factors do not tip the scales toward allowing the scheduled execution to go forward. In a capital case, "the possibility of irreparable injury weighs heavily in the movant's favor, especially when his claim has some merit." *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) (quotation omitted); *see also Gutierrez v. Saenz*, 818 Fed. App'x 309, 314 (5th Cir. 2020). On one hand the public has an "in

timely enforcement of the death sentence," *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020), but on the other hand the "[p]ublic interest is never served by a state's depriving an individual of a constitutional right." *Kite v. Marshall*, 454 F. Supp. 1347, 1351 (S.D. Tex. 1978). Courts have recognized that "because RLUIPA enforces the First Amendment and must be construed broadly to protect religious exercise, a RLUIPA violation is in the public interest and tips the balance of harms in the plaintiff's favor." *Smith*, 844 F. App'x at 294. Finally, granting of a stay would harm the Defendants only in that they could not conduct Barbee's execution on their current schedule. The Defendants have not pointed to any other injury they would suffer if the Court provides time to decide the important questions in this case. The Court finds that the *Nken* factors weigh in favor of staying Barbee's execution.

## VI. Other Pending Motions

Two motions are outstanding in this case. Barbee has filed an opposed Motion for Expedited Briefing on Motion for Stay of Execution. (Docket Entry No. 7). Because the parties have sufficiently briefed the relevant issues in a prompt manner, the Court **DENIES** Barbee's motion as **MOOT**.

The Defendants have filed an unopposed Motion for Leave to File Response in Excess of Page Limits. (Docket Entry No. 8). The Court **GRANTS** the Defendants' motion.

## VII. Conclusion

The issues raised by this lawsuit are "not simple, and they require a careful consideration of the legitimate interests of both prisoners and prisons." *Murphy*, 139 S.

Ct at 1484 (Alito, J., dissenting). Barbee's "claims are dependent on the resolution of fact-intensive questions that simply cannot be decided without adequate proceedings and findings at the trial level." *Id*. This Court cannot answer those questions in the short time remaining before the looming execution date. Staying Barbee's execution will allow time to explore and resolve serious factual issues concerning the balance between his religious rights and the prison's valid concerns for security.

The Court, therefore, **GRANTS** Barbee's motion to stay his execution. (Docket Entry No. 6). The State may not carry out Barbee's execution until the State allows his chosen spiritual advisor in the execution chamber, authorizes contact between Barbee and his spiritual advisor, and allows his spiritual advisor to pray during the execution.

It is so ORDERED.

SIGNED on this 7th day of October, 2021.

_____
Kenneth M. Hoyt
United States District Judge