IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BARBEE, *Plaintiff*, | § § § § | |
| | § | CIVIL ACTION NO. 4:21–CV–03077 |
| v. | § § | DEATH PENALTY CASE |
| | § | |
| BRYAN COLLIER, et al., *Defendants*. | § § § | |

### DEFENDANTS COLLIER, LUMPKIN, AND CROWLEY'S RESPONSE TO COURT'S ORDER FOR BRIEFING (ECF NO. 36)

Pending before the Court is Defendants' motion to dismiss based on mootness, Plaintiff's response in opposition, and Defendants' reply. Defendants have presented uncontested evidence that TDCJ officials have approved Barbee's requested religious accommodations. No relief sought in this case remains unresolved. The Court has ordered briefing on whether an injunction would nonetheless be appropriate as opposed to dismissal without prejudice based on mootness. Defendants assert the Court now lacks jurisdiction to issue an injunction for past conduct that is not ongoing, and the Prison Litigation Reform Act limits the Court's ability to issue an injunction in this case.

### I. Current Status of Barbee's Religious Requests and the Approved Accommodations

Barbee filed suit seeking an injunction prohibiting TDCJ from carrying out his execution in a manner inconsistent with his religious requests to have his chosen spiritual advisor lay hands on him and to audibly pray during his execution. Bobby

Lumpkin, Director of the TDCJ Correctional Institutions Division, provided a sworn statement explaining that these accommodations have been approved and will be fulfilled during Barbee's execution. ECF No. 28-1. The uncontroverted evidence demonstrates Barbee's accommodations have been officially approved by the person with authority to do so, at least one other prisoner has been executed with similar religious accommodations without issue, and Barbee's chosen spiritual advisor has been previously vetted and approved. ECF No. 28-1.

In response to TDCJ's approval of his requested religious accommodations, Barbee raised an additional and unpled religious request to have his spiritual advisor hold his hand during his execution. ECF No. 31. Although hand-holding is not a live claim in this case and is not a form of injunctive relief that was previously pled, TDCJ nonetheless considered and approved the additional request. ECF No. 32 and 33. Through a sworn statement, Director Lumpkin explains the accommodations have been officially approved and will not be withdrawn. ECF No. 33. Director Lumpkin is the official who is statutorily responsible for overseeing executions in the State of Texas. Tex. Code. Crim. Pro. § 43.15. His approval is binding. There is no evidence before the Court suggesting these accommodations will not be provided during Barbee's execution on November 16, 2022.

## II. There is No Ongoing Violation and an Injunction is Not Proper.

For the reasons set forth in Defendants' motion to dismiss based on mootness

and their reply, ECF Nos. 28 and 32, Barbee's claims are moot.

**A.     Defendants Have Affirmatively Demonstrated Mootness.**

As the Court notes, "Barbee requests a preliminary and permanent injunction prohibiting Defendants from executing him until they allow his spiritual advisor to pray with him and touch him, including holding his hand, during the execution." ECF No. 36 (citing ECF No. 1 at 13)). The Court stayed an earlier execution date, stating: "The State may not carry out Barbee's execution until the State allows his chosen spiritual advisor in the execution chamber, authorizes contact between Barbee and his spiritual advisor, and allows his spiritual advisor to pray during the execution." ECF No. 14. TDCJ has done exactly that. Barbee's chosen spiritual advisor, who has already been vetted and approved to be in the execution chamber, is allowed to have physical contact with Barbee and to pray aloud during Barbee's execution. By further approving hand-holding, TDCJ officials have provided relief beyond that which Barbee asked for in this lawsuit, and beyond the basis for the stay of execution. There is nothing more to enjoin in this case.

There is no perspective relief in this case that has not been accommodated by TDCJ. This is not a class action and the interests of potential future litigants may not be considered in determining whether Barbee's claims are moot.

**B. There is No Evidence Before the Court to Support a Finding that the Conduct is Reasonably Likely to Reoccur.**

The sole basis for the Court to deny Defendants' assertion of mootness and consider injunctive relief is upon a finding that the conduct is reasonably likely to reoccur to Plaintiff Barbee. Barbee has presented no evidence that his claim is capable of repetition yet evading review on the basis that Defendants could theoretically retract their approval of his religious accommodations. *See Sosna v. Iowa*, 419 U.S. 393 (1975) (opining that the "capable of repetition, yet evading review" doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again). Hypothetical concerns, without actual evidence, are insufficient to overcome mootness. *Id.* For this Court to reject mootness and consider an injunction, the Court must first make a factual finding, based on evidence in the record, that there exists a reasonable expectation that the same complaining party would be subjected to the same action again. Concern for other prisoners' rights or future potential litigants cannot form the factual basis for overcoming mootness.

**C. The Written Policy is Consistent with Barbee's Approved Religious Accommodations and is Not Material to the Issues Before the Court.**

Barbee opposes mootness on the basis that the TDCJ written policy governing executions has not been changed to reflect approval of physical contact and audible

prayer for other prisoners facing execution. The written policy is not relevant to this Court's mootness analysis for 3 reasons: (1) the written policy is silent as to physical contact and audible prayer and therefore, is consistent with TDCJ's new practice of allowing physical contact and audible prayer; (2) The Prison Litigation Reform Act limits this Court's ability to enjoin TDCJ and its officials; (3) the Supreme Court's dicta in *Ramirez v. Collier* about TDCJ's written policy is not applicable to this Court's mootness analysis.

### (1) The policy is consistent with Barbee's approved religious accommodations.

The TDCJ Execution Policy details the process by which a prisoner may request to have his spiritual advisor present in the execution chamber during his execution. ECF No. 1 at 28. The policy describes the vetting and approval process for spiritual advisors but is silent as to what a spiritual advisor may do inside the execution chamber. ECF No. 1 at 28. The religious accommodations approved for Barbee are consistent with the written policy.

TDCJ officials are entitled to deference in determining that religious requests for accommodations in the execution chamber are better assessed on a case-by-case basis rather than a pre-determined approval in a written policy. Prisoners' requests regarding their spiritual advisor's actions inside the execution chamber have varied widely. Prisoner's have requested that the spiritual advisor refrain from touching them at any time, that the spiritual advisor lay hands on them, to hold hands or lay a hand on the

5

shoulder, that the spiritual advisor pray aloud or sing. Each request must be considered carefully on a case-by-case basis. Not only is an individualized assessment the preferable process from a security perspective, such analysis is mandated by RLUIPA. *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004). There are some requests that may implicate such extreme security concerns that TDCJ may justifiably and legally refuse such requests. The written policy, therefore, cannot proactively approve religious requests for accommodation, when the requests are so varied and the security implications must be individually considered. But regardless, the written policy simply does not and will not affect Barbee's rights or his religious accommodations.

**(2) The Prison Litigation Reform Act limits the Court's authority to enjoin the State where it is not necessary to correct an ongoing violation.**

Even if TDCJ changed the written policy in a manner that reflected a universal approval of physical contact and audible prayer for all executions, that change would have no effect on Barbee's rights or his specific requests. His requests have already been approved and, as Director Lumpkin attested, Barbee's religious accommodations will not be affected by any future change in the execution policy. ECF No. 28-1.

The Prison Litigation Reform Act of 1995 (PLRA) states that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs"; that such relief must be "narrowly drawn, [and] exten[d] no further than

6

necessary to correct the violation of the Federal right"; and that it must be "the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

The statute limits a court's authority to issue an injunction in an effort to effect or protect the rights of persons other than the particular plaintiff in the case before it. Absent a finding, based on evidence in the record, that the violation of Barbee's rights is likely to reoccur, an injunction enjoining conduct that is unequivocally not ongoing would not be narrowly drawn and would extend further than necessary to correct a violation. Moreover, a court generally may not require conduct to be added to a written policy as part of injunction. *See, e.g.*, *Gates v. Cook*, 376 F.3d 323, 338–39 (5th Cir. 2004) (vacating a trial court's injunction that required a prison to reduce a practice to writing). In *Gates*, the Fifth Circuit concluded that while a written policy seems like it would be helpful and even preferable to an unwritten one, the PLRA does not authorize an injunction to go so far as to require the measure to be in writing. *Id*. Any injunctive relief must be narrowly drawn and extend no further than necessary to correct the violation. 18 U.S.C. § 3626(a)(1)(A); *Ball v. LeBlanc*, 792 F.3d 584, 598 (5th Cir. 2015).

### (3) The *Ramirez v. Collier* opinion does not support an injunction.

In *Ramirez v. Collier*, _U.S._, 142 S Ct 1264, 1283 (2022), the United States Supreme Court commented "If States adopt clear rules in advance, it should be the rare case that requires last-minute resort to the federal courts." This commentary was dicta

and does not represent a rule of law or controlling precedent. Rather, it reflects the Supreme Court's concern for last-minute stays of execution. That concern was already realized and is thus unavoidable in the instant case because Barbee received a stay of execution and the parties already resorted to federal court. Additionally, unlike *Ramirez*, this Court is presented with a record of religious requests that have been approved.

In *Ramirez v. Collier*, the United States Supreme Court assessed a prisoner's request for a stay of execution and request for injunctive relief. Unlike Barbee's religious requests, TDCJ had denied Ramirez's request for physical contact and audible prayer in the execution chamber. The issues before the Supreme Court were whether TDCJ's prohibition of physical contact and audible prayer violated Ramirez's rights. No such analysis is now before this Court because there is no prohibition. Barbee has no unapproved religious requests.

Moreover, the Supreme Court's commentary regarding preliminary injunctions was an admonition to future plaintiffs; not a directive that an injunction should issue for an otherwise moot claim. The Supreme Court directed plaintiffs and courts that instead of staying executions at the last minute, if a plaintiff has demonstrated the elements for a preliminary injunction, an injunction should be issued rather than a stay of execution. *Id.* at 1283. "This approach balances the State's interest in carrying out capital sentences without delay and the prisoner's interest in religious exercise." *Id.* No such balancing is applicable here because all the relief Barbee requested has been

approved. Barbee's interest in religious exercise is satisfied.

**D.     Mootness Deprives the Court of Jurisdiction.**

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "[W]hen the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," a case is considered moot. *Id.* at 396 (internal quotation marks omitted).

The Court also lacks jurisdiction to enjoin the Defendants based on their entitlement to Eleventh Amendment immunity. State officials sued in their official capacities are immune from suit under the Eleventh Amendment. A suit brought under RLUIPA against officials for prospective injunctive relief may proceed under the *Ex Parte Young* exception to Eleventh Amendment immunity. In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court must assess whether there exists an alleged ongoing violation of federal law and seeks relief properly characterized as prospective. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298–299 (1997). There is no alleged ongoing violation of federal law as to Barbee. Rather, he complains that the violation could hypothetically reoccur, or that the violation could occur to some other prisoner besides him. Neither allegation can support an assertion of an "ongoing violation," which is a fundamental element of the *Ex parte Young* exception to sovereign immunity.

9

**E.     An Injunction May Only Issue to Correct an Ongoing Violation of Rights.**

In addition to the jurisdictional bar imposed by the mootness doctrine, Barbee cannot demonstrate he is entitled to an injunction at this point in the litigation. The Court indicates that "the earlier stay order has already found that Barbee has met the preliminary requirements for an injunction." ECF No. 36 at 3. However, even assuming Barbee had previously demonstrated the requirements for a preliminary injunction at some point earlier in this litigation, a stay of execution rather than an injunction was issued and the mootness doctrine now cuts off the need for an injunction.

To be entitled to an injunction, a claimant must establish "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that the injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dall.*, 460 F.3d 607, 611 (5th Cir. 2006). Barbee cannot demonstrate either of the first two elements for an injunction.

First, there is no basis for the Court to determine that Barbee can succeed on the merits of his claim. Barbee can no longer meet his initial burden of his RLUIPA claim—a substantial burden on his religious exercise—because there is no prohibition or restriction on Barbee's asserted religious exercise. Barbee will receive the precise religious exercise he has requested. Accordingly, the burden does not shift under the RLUIPA analysis to TDCJ to demonstrate compelling reasons for the prohibition.

10

There is no prohibition for this Court to assess.

Second, the failure to issue an injunction here will have no effect on Barbee's rights whatsoever. Barbee cannot show he will suffer an irreparable injury absent an injunction, because he has all relief he requested in this lawsuit. There is nothing to enjoin that Barbee does not already have.

**Conclusion**

TDCJ's voluntary approval of Barbee's requests for relief deprives the Court of the necessary jurisdiction to issue an injunction and defeats the necessary elements for an injunction. Accordingly, the Court should grant Defendants' motion to dismiss based on mootness and dismiss the case without prejudice.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24079074
Southern District No. 1563191
Leah.Oleary@oag.texas.gov

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9918

**ATTORNEYS FOR DEFENDANTS
COLLIER, LUMPKIN, AND CROWLEY**

### NOTICE OF ELECTRONIC FILING

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the Southern District of Texas, on September 26, 2022.

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General

### CERTIFICATE OF SERVICE

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, do hereby certify that on September 26, 2022, a true and correct copy of the foregoing was served by the electronic case-filing system of the Court to counsel of record, who consented in writing to accept service by electronic means.

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General