United States District Court
Southern District of Texas
**ENTERED**
November 03, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BARBEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-03077 |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Texas death row inmate Stephen Barbee faces an execution date of November 16, 2022. On September 21, 2021, Barbee filed this lawsuit under 42 U.S.C. § 1983 claiming that Texas will carry out his execution in a manner that will violate his religious rights. (Docket Entry No. 1). The defendants now seek dismissal of this case. For the reasons discussed below, the Court will deny the motion to dismiss.

**I.    Barbee's Requested Religious Accommodation**

On February 23, 2006, a jury in Tarrant County, Texas convicted Barbee of capital murder for killing his pregnant girlfriend and her seven-year-old son. On September 21, 2021, Barbee filed his complaint pursuant to 42 U.S.C. § 1983. The defendants in this lawsuit are Bryan Collier (Executive Director of the Texas Department of Criminal Justice), Bobby Lumpkin (Director of the Texas Department of Criminal Justice-Correctional Institutions Division), and Dennis Crowley (Warden of the Huntsville Unit).[1] In his complaint, Barbee requested a preliminary injunction "prohibiting defendants from executing [him] until they allow his spiritual advisor not only to be

---

[1]    Another federal court has noted that "Warden Crowley has recently stepped down" as Warden of the Huntsville Unit. *Gonzales v. Collier*, 2022 WL 4100852, at *2 (S.D. Tex. 2022). The defendants in this litigation have not brought that change to the Court's attention nor asked to substitute his replacement as a party to this litigation.

present with him in the chamber, but to pray audibly with him and have physical contact with him in order to confer a blessing upon him." Barbee later clarified that he also needed his spiritual advisor to hold his hand. Barbee's complaint alleges potential violations of the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. Barbee's complaint requests a preliminary and permanent injunction prohibiting defendants from executing him without accommodating his religious requests.[2]

The defendants have moved to dismiss this case as moot. They rely on an affidavit in which Director Lumpkin averred that TDCJ would allow audible prayer and some touch in the execution chamber. (Docket Entry No. 28, Exhibit A). After a federal court issued an injunction in another case requiring TDCJ to permit an inmate hold his spiritual advisor's hand in the execution chamber, Director Lumpkin provided an affidavit promising that same accommodation in this case. (Docket Entry No. 31, Exhibit A). On that basis, the defendants argue that this case is moot.

---

[2] The complaint requested three forms of relief:

1. A declaratory judgment that TDCJ's "No Speaking" and "No Contact" policies violate Mr. Barbee's rights under the First Amendment's Free Exercise Clause.
2. A declaratory judgment that TDCJ's "No Speaking" and "No Contact" policies violate RLUIPA.
3. A preliminary and permanent injunction prohibiting defendants from executing Mr. Barbee until they allow his spiritual advisor not only to be present with him in the chamber, but to pray audibly with him and have physical contact with him in order to confer a blessing upon him.

(Docket Entry No. 1 at 13). Even though the complaint specifically requests a declaratory judgment, Barbee has elsewhere said that he "made no such request." (Docket Entry No. 31 at 14). The defendants believe that Barbee still requests a declaratory judgment. (Docket Entry No. 28 at 5). It is unclear whether Barbee still seeks declaratory relief.

## II.     History of Similar Litigation

This lawsuit is not the first to raise questions about inmates' religious rights during the execution process. Other inmates have brought a succession of challenges to TDCJ's execution protocol and practice. How the federal courts have responded to that litigation, and the resultant changes introduced by TDCJ, inform the matters now before the Court.

Texas adopted lethal injection as its sole method of execution in 1982. In 1985, Texas adopted an official execution protocol which required a TDCJ-employed chaplain to assist in each execution. For over thirty years, it does not appear that any inmate asked for an outside spiritual advisor to attend his execution. TDCJ has never identified any problem created by the presence of clergy in the execution chamber during that period, or afterwards.

### A.     TDCJ Bars All Clergy from the Execution Chamber

In early 2019, Texas inmate Patrick Henry Murphy sued because TDCJ protocol would not allow the spiritual advisor of his choice—a Pure Land Buddhist priest—in the execution chamber. *Murphy v. Collier*, 4:19-cv-1106 (S.D. Tex.). The United States Supreme Court stayed Murphy's execution on March 28, 2019. *Murphy v. Collier*, 139 S. Ct. 1475 (2019). That same day, Justice Kavanaugh entered a concurring statement which proposed that "there would be at least two possible equal-treatment remedies available to the State going forward: (1) allow all inmates to have a religious adviser of their religion in the execution room; or (2) allow inmates to have a religious adviser, including any state-employed chaplain, only in the viewing room, not the execution room." *Id*. (Kavanaugh, J., concurring). Five days later, TDCJ revised its execution protocol to exclude all spiritual advisors, even prison-employed chaplains, from the execution chamber.

B.     **Texas Allows Outside Clergy in the Execution Chamber**

On September 26, 2019, Ruben Gutierrez filed a civil-rights lawsuit claiming that TDCJ's post-*Murphy* policy violated his religious rights. *Gutierrez v. Saenz*, 1:19-cv-185 (S.D. Tex.). The Supreme Court ultimately stayed Gutierrez's execution. Along with that stay, the Supreme Court assigned the district court a task: "promptly determine, based on whatever evidence the parties provide, whether serious security problems would result if a prisoner facing execution is permitted to choose the spiritual adviser the prisoner wishes to have *in his immediate presence* during the execution." *Gutierrez v. Saenz*, 141 S. Ct. 127, 128 (2020) (emphasis added).

The defendants in the *Guiterrez* case averred that "there is no circumstance in which it would be safe or controlled for a non-TDCJ employee to be present in the execution chamber during an execution. The risks of permitting an unknown person in the execution chamber are significant." *Gutierrez v. Saenz*, 1:19-cv-185 (S.D. Tex.), Dkt. No. 110 at 19. After the submission of evidence on the question of security, the district court in *Gutierrez* entered an order specifically "finding that the extensive evidence submitted by the Parties does not demonstrate that serious security concerns would result from allowing inmates the assistance of a chosen spiritual advisor in their final moments." *Gutierrez v. Saenz*, 1:19-cv-185 (S.D. Tex.), (Docket Entry No. 124). On January 25, 2021, the Supreme Court accepted the district-court findings and remanded the *Gutierrez* case for adjudication of his claims. *Gutierrez v. Saenz*, 141 S. Ct. 1260, 1261 (2021).

While the *Gutierrez* case was under consideration, parallel litigation arose in Alabama. An Alabama inmate sued because he wanted his personal spiritual advisor to be physically present in the execution chamber. The Alabama inmate specified that he wanted his spiritual advisor "to pray with [him], hold his hand, and otherwise touch [him] at the moment of his death." *Smith v. Dunn*, 516 F. Supp.3d 1310 (M.D. Ala. 2021). On February 11, 2021, Supreme Court Justices upheld an injunction staying Smith's execution and issued two opinions which would be

instructive for future litigation. Taken together, the *Smith* opinions signaled to States that they should preserve an inmate's religious rights during the execution process.[3]

On April 21, 2021, TDCJ adopted a new execution protocol which, with certain preliminary requirements, will allow a Texas inmate's chosen spiritual advisor to accompany him during an execution ("2021 protocol"). The 2021 protocol gives precise details about the qualifications of, background check for, and training of an inmate's spiritual advisor. The 2021 protocol specifies that the spiritual advisor "will be escorted into the execution chamber" and may be "present in the execution chamber." The text of TDCJ's 2021 protocol—which remains in place—is silent on what a spiritual advisor may do while in the execution chamber. The policy does not provide any limitation or expectation on a clergy member's ability to touch the condemned or pray, but it also does not guarantee any religious expression.

### C. TDCJ's Unwritten and Formal Practice

Prison officials apparently have discretion to interpret the 2021 protocol. Prison officials initially decided that the silence in the 2021 protocol meant that a spiritual advisor could neither touch an inmate nor pray audibly in the execution chamber. As a result, inmates sued and challenged TDCJ's limitations on physical contact and prayer. While courts have considered those inmates' claims in preliminary contexts such as injunctions and stays of execution, no case has yet reached trial. No lawsuit has yet rendered a conclusive decision regarding TDCJ's execution

---

[3] In an opinion joined by three other Justices, Justice Kagan opined that "Alabama's policy substantially burdens Smith's exercise of religion." *Dunn v. Smith*, 141 S. Ct. 725, 726 (2021) (Kagan, J., concurring). Justice Kagan stated that a "categorical bar" on spiritual advisors in the execution chamber infringes on an inmate's "right to practice his faith free from unnecessary interference, including at the moment the State puts him to death." *Id*. In a dissenting opinion, Justice Kavanaugh stated that he would have allowed the execution to proceed because the Alabama policy "serves the State's compelling interests in ensuring the safety, security, and solemnity of the execution room." Justice Kavanaugh still counseled the States to change their policy as a practical matter: "it seems apparent that States that want to avoid months or years of litigation delays because of this RLUIPA issue should figure out a way to allow spiritual advisors into the execution room, as other States and the Federal Government have done. Doing so not only would satisfy inmates' requests, but also would avoid still further delays and bring long overdue closure for victims' families." *Id*. at 726 (Kavanaugh, J., dissenting).

protocol or the decisions made by TDCJ officials. The Court will discuss below how each of the lawsuits has brought this case to where it is today.

1. Barbee

Barbee filed this lawsuit on September 21, 2021. He "is a devout Christian and has been throughout his life."[4] Barbee has designated Barry Brown of the Salvation Army as his spiritual advisor and requires that Brown "be physically present in the chamber, to audibly pray and to physically touch Barbee in order to confer ministrations and a spiritual blessing upon him at the time of his death." Barbee's complaint asserts that "[t]he laying on of hands—a symbolic act in which religious leaders place their hands on a person in order to confer a spiritual blessing—is part of Barbee's Pentecostal faith." He specifically requested in his prison grievance that his spiritual advisor hold his hand.

2. John Henry Ramirez

Shortly before Barbee filed the instant litigation, Texas inmate John Henry Ramirez brought a section 1983 lawsuit challenging the 2021 protocol. *Ramirez v. Collier*, 4:21-cv-02609. Ramirez sued after TDCJ authorized his spiritual advisor to be present in the execution chamber, but would only allow him to stand silent in the corner. The Supreme Court eventually heard oral arguments and entered an opinion on whether a preliminary injunction should protect Ramirez's religious rights. On March 24, 2022, the *Ramirez* Court found under a preliminary-injunction standard that a RLUIPA claim based on limitations on touch and prayer would likely succeed on the merits. *Ramirez v. Collier*, 142 S Ct 1264 (2022). *Ramirez* recommended that States "adopt clear rules" regarding religious expression in the execution chamber. 142 S. Ct. at 1283. With clear

---

[4] These quotes are taken from Docket Entry No. 1 at pp. 8, 9 and attached Exhibit "E".

rules "it should be the rare case that requires last-minute resort to the federal courts." *Id*. Texas has not responded with any formal policy.

After *Ramirez* issued, Director Lumpkin provided an affidavit in this lawsuit in which he assures that Barbee's spiritual advisor could be present in the execution chamber, could touch Barbee, and could pray with him. (Docket Entry No. 28, Attachment 1). Director Lumpkin, however, did not specifically allow him to hold Barbee's hand during the execution process.

### 3. Ramiro Felix Gonzales

Texas inmate Ramiro Felix Gonzales filed a similar lawsuit in March 2021. *Gonzales v. Collier*, 4:21-cv-00828. Like Barbee and Ramirez, TDCJ initially would not accommodate physical contact or audible prayer at Gonzales' execution. Similarly, TDCJ approved those accommodations after the *Ramirez* decision. But, as with Barbee, TDCJ would not allow Gonzales' spiritual advisor to hold his hand during the execution.

As Gonzales' execution date approached, the federal district court considered the question of whether a preliminary injunction should require the requested handholding in the execution chamber. After considering argument and evidence, the district court entered a preliminary injunction which provided that "the State of Texas may proceed with Gonzales' scheduled execution only if he's allowed his requested religious accommodations, being that his spiritual advisor is permitted to hold his hand, place another hand on his chest, and audibly pray during and at the time of execution." *Gonzales v. Collier*, 2022 WL 4100852, at *1 (S.D. Tex. 2022). The district court observed that "Texas hasn't yet responded with a formal policy change," despite the Supreme Court's encouragement in *Ramirez*. *Gonzales v. Collier*, 2022 WL 4100852, at *2 (S.D. Tex. 2022). Instead, "Director Lumpkin and the Warden of the Huntsville Unit will make a case-by-case assessment of what religious requests TDCJ will honor." *Id*. The federal court also noted

that "accommodations granted in advance of the execution can potentially be modified at the discretion of Director Lumpkin and the Warden in the moments immediately prior to the commencement of the execution." *Gonzales v. Collier*, 2022 WL 4100852, at *2 (S.D. Tex. 2022). The defendants did not appeal the preliminary injunction in Gonzales.

### D. TDCJ's Recent Actions

Where prison officials originally interpreted the 2021 protocol's silence as a bar on touch and prayer, they now interpret the provision to allow it, at their discretion. After the preliminary injunction issued in *Gonzales*, Director Lumpkin provided an affidavit in this case stating that Barbee would be allowed to hold his spiritual advisor's hand during the execution. Director Lumpkin has also assured that "[t]hese approved accommodations will not be withdrawn."

## III. Motion to Dismiss

The defendants have moved to dismiss this case. They argue that "Barbee is being provided with all the relief he seeks in this lawsuit" because they have agreed to accommodate his religious requests. Nevertheless, the Court will deny the defendants' motion to dismiss for the reasons discussed hereafter.

### A. Rule 12(b)(1) Standard

The defendants move for dismissal under Rule 12(b)(1). "A case is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). When the controversy between litigants "has resolved to the point that they no longer qualify as 'adverse parties with sufficient legal interests

to maintain the litigation,' [courts] are without power to entertain the case." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (citation omitted). "If a claim is moot, it presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *National Rifle Ass'n of America v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013) (internal quotation marks and citation omitted).

### B. Analysis

At the onset, the Court sets out what TDCJ *has not* done. In *Ramirez*, the Supreme Court encouraged States to "adopt clear rules" and "streamlined procedures" that would protect an inmate's religious rights in the execution chamber. *Ramirez*, 142 S. Ct. at 1283. TDCJ has not responded by enacting any formal policy guaranteeing religious expression in the execution chamber. Instead, TDCJ has left in place an official execution protocol that contains provisions describing the presence, approval process, and vetting requirements for spiritual advisors. Hence, the 2021 protocol is silent as to what a spiritual advisor may do, if anything, inside the execution chamber. *See Ramirez*, 142 S. Ct. at 1274 ("The protocol says nothing about whether a spiritual advisor may pray aloud or touch an inmate for comfort.").

TDCJ has apparently left the question of what a spiritual advisor may do to the discretion of prison officials, including the TDCJ Director.[5] Until quite recently, TDCJ officials interpreted the silence in the official protocol to *prohibit* any physical touch or audible prayer in the execution chamber. Now, TDCJ would have the Court accept their latest pronouncement that the same

---

[5] Some ambiguity even exists over who may grant or modify religious accommodations. TDCJ requires inmates to request their religious accommodations through the prison grievance process, but it is not clear whether lower ranking prison officials initially responding to the grievances, have authority to grant them. The *Gonzalez* case recently found that religious accommodations can be modified by "Director Lumpkin *and* the Warden [of the Huntsville (Walls) Unit]." *Gonzales v. Collier*, 2022 WL 4100852, at *2 (S.D. Tex. 2022) (emphasis added). The parties in this litigation assume that "TDCJ policy is subject to change at the sole discretion and whim of one of the defendants, Mr. Lumpkin." (Docket Entry No. 38 at 4).

provisions may be read to allow physical contact and audible prayer. After the *Ramirez* and *Gonzales* cases, TDCJ officials have initiated a practice of allowing physical contact and audible prayer when the requests are sufficiently timely and permit security checks.

However, the defendants have not specifically formalized in a policy or otherwise described what the basis is for it unwritten practice. The record does not suggest or support the conclusion that an accommodation of an inmate's requested religious practice is automatic or absolute; hence, each inmate must seek an approval of TDCJ subject to an official's discretion. Thus, the parameters of this unwritten practice escapes court scrutiny. It is clear, however, that the challenged practice is not a regulatory change enacted after a thorough, legislative-like process by a TDCJ board or governing body. Instead, is a discretionary, ad hoc practice that leave the inmates constitutional rights under RLUIPD to the discretion of TDCJ officials.

In a succession of affidavits, Director Lumpkin has promised that Barbee may have his spiritual advisor in the execution chamber, that the two may hold hands, and that the spiritual advisor may pray. He has assured the Court that these approved accommodations will not be withdrawn. With that promise, the defendants now argue that the uncontroverted evidence demonstrates Barbee's accommodations have been officially approved by the person with authority to do so, while pointing to at least one other prisoner whose request was granted and not withdrawn. And, because Barbee's chosen spiritual advisor has been previously vetted and approved there is no basis to assume that the accommodation will not be honored. Moreover, they argue, he is the official who is statutorily responsible for overseeing executions in the State of Texas. Tex. Code. Crim. Pro. § 43.15. His approval is binding. And, because there is no alleged ongoing violation of federal law as to Barbee, his case is rendered moot because the Court can rely on "TDCJ's good faith cessation of the alleged wrongful conduct." *See* (DE 28 at 5).

### C. The Mootness Argument

A defendant asserting mootness must show that no live controversy exists. Here, the defendants rely on a crafted "voluntary cessation" doctrine that they contend renders a case moot, under certain circumstances, particularly, when the defendants cease the complained-of conduct.[6] Nevertheless, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *see also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 174 (2000) ("A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case.").

The Supreme Court has explained that "[t]he test for mootness in cases such as the one at bar is a stringent one," *City of Mesquite*, 455 U.S. at 289 n.10, placing on a defendant the "heavy" burden of showing that the case is, in fact, moot. *Pederson v. La. State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000) (quotations omitted). A case is moot only when the movant makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007).

This "not reasonably expected to recur" proposition is established in Fifth Circuit case law. The Fifth Circuit recognizes that "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith . . . ." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir.2009), *aff'd on other grounds sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011); *see also Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018). However, that good faith does not migrate to the level mootness in a death case.

---

[6] The defendants refer to a "cessation" of wrongful conduct. This is an exercise of discretion which means the defendants have not yet ceased any conduct relating to Barbee's future execution or those similarly situated. They have only promised to conduct Barbee's execution in a manner that comports with his rights.

Courts in this Circuit have "treat[ed] a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity." *Sossamon*, 560 F.3d at 325. To be sure, this policy places a lesser burden on governmental entities than on citizens. However, that lesser burden does not apply in every case. A lesser burden exists only when the challenged conduct involves "a formal policy change." *Pool v. City of Houston*, 978 F.3d 307, 314 (5th Cir. 2020). Here, no formal policy has been implemented that recognizes that an inmate's fundamental religious rights exist in the death chamber under RLUIPA.

It is not as though the TDCJ is operating "in a blind". It has been encouraged by the highest court in the land to develop a policy that can be reviewed.[7] The stubbornness of TDCJ to enact a policy that removes all discretion, except in critical instances, militates against extending the lesser burden to TDCJ.

Three truths support the Court's assessment. First nothing in the Director's promise explains how TDCJ will interpret the "silent execution" protocol in the future. Second, TDCJ's conduct in similar cases shows that change by TDCJ in its interpretation of its 2021 protocol has followed unfavorable (yet still not conclusive) rulings by federal courts. The timing of each change has failed to create an environment where trust is nurtured by the process. *See Fenves*, 979 F.3d at 328-29. Third, the defendants have failed to provide any assurance that they disavow the constitutional and legal arguments on which they have strenuously relied to deny religious accommodations in the past. *See id.* at 328-29. Earlier in this litigation, the defendants argued

---

[7] The Fifth Circuit holds government actors to the same burden as other defendants when three factors are present: "(1) the absence of a controlling statement of future intention; (2) the suspicious timing of the change; and (3) the [government's] continued defense of the challenged policies." *Speech First, Incorporated v. Fenves*, 979 F.3d 319, 328-29 (5th Cir. 2020) (applying the government presumption to a university); *see also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767-70 (6th Cir. 2019).

that federal law does not guarantee touch and audible prayer in the execution chamber. Even with the gradual revisions to what may be allowed in the execution chamber, the defendants have not disavowed their earlier argument that neither RLUIPA nor the First Amendment requires an accommodation of Barbee's religious rights.[8]

A case is not rendered moot, despite accommodations, when a defendant still defends the constitutionality of its challenged policy. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (finding that voluntary cessation of challenged practice did not moot case where the defendant "vigorously defends the constitutionality" of the challenged practice and "clearly [has] not met" its "heavy burden"). The defendants, therefore, still bear the formidable burden of showing that the State is absolutely clear in its policy that the allegedly wrongful behavior could not reasonably be expected to recur. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020).

Barbee argues that there is no absolute certainty that the accommodations requested and conceded by the Director will not be changed or modified. Barbee contends that the defendants have not adequately reconciled Director Lumpkin's affidavits with his apparent ability to change the execution practice at the last minute. Barbee also observes that Director Lumpkin's promise is not an institutional guarantee—Director Lumpkin's assurance is personal and it may not be carried out if he is replaced as Director, or he is not present at the execution for whatever reason. Both of these arguments are meritorious and compelling in this case. Simply, stated "as long as

---

[8] In the related cases, the defendants have maintained that neither the Constitution nor RLUIPA require those accommodations. For example, earlier this year the defendants argued before the Supreme Court that "a categorical ban on audible prayer in the execution chamber is the least restrictive means of furthering . . . compelling governmental interests." *Ramirez*, 142 S. Ct. at 1279. The Supreme Court did not explicitly reject that argument as it was only before the court in the context of a preliminary injunction. In earlier briefing in this case, the defendants have argued that the law does not mandate Barbee's religious requests. (Docket Entry No. 9 at 28-40). It is not clear whether the defendants have taken a different position in their more-recent briefing.

the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984). The Court, therefore, DENIES the pending motion to dismiss.

## IV. Injunction

Barbee's execution is fast approaching. He does not request, and the Court will not entertain any request for, a stay of execution. *See Ramirez*, 142 S. Ct. at 1282 (holding that a "tailored injunction" is potentially "the proper form of equitable relief when a prisoner raises a RLUIPA claim in the execution context," as opposed to "a stay of execution"). Instead, Barbee asks the Court to issue an injunction that would prevent the State of Texas from conducting his execution in a manner that would violate his religious rights. For the reasons discussed below, the Court determines that the issuance of an injunction is an appropriate remedy.

On October 7, 2021, this Court entered an order under the stay-of-execution based on its findings that:

> the defendants had not accommodated Barbee's religious requests, that he would likely succeed on the merits of his RLUIPA claim, that he may suffer irreparable harm if TDCJ does not honor his religious rights, that equity tips in his favor, and that the public interest favors the preservation of religious rights.

The Court stated the following:

> The State may not carry out Barbee's execution until the State allows his chosen spiritual advisor in the execution chamber, authorizes contact between Barbee and his spiritual advisor, and allows his spiritual advisor to pray during the execution.

*See* [DE 14]. "Under such circumstances, the party seeking [injunctive] relief 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Ramirez*, 142 S. Ct. at 1275 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

The defendants present two arguments as to why Barbee is not entitled to an injunction. First, they argue that, because they have agreed to accommodate his religious requests, "[t]here is no prohibition for this Court to assess." Second, the defendants argue that Barbee cannot show an irreparable injury because they will conduct his execution in accordance with his religious requests. These arguments fail to address the urgency to restrain the power of the State in the face of a federal constitutional and statutory right already afforded Barbee that has not been formally recognized by the State.

The Court approaches the issuance of an injunction with some trepidation. In this, and other cases, the defendants have begrudgingly honored inmates' religious rights in response to federal intervention. TDCJ's approach to an inmate's religious rights has been in flux for the past two years. TDCJ initially allowed a spiritual advisor into the execution chamber, but then withdrew that accommodation when inmates requested the assistance of non-TDCJ spiritual advisors. In the *Gutierrez* litigation, TDCJ took the position that an outside spiritual advisor would pose too grave a threat to allow him inside the execution chamber. After federal intervention, TDCJ changed its policy to allow a spiritual advisor into the chamber.

It has not escaped the Court's notice that TDCJ now has a written policy that is silent on what a spiritual advisor may do in the execution chamber. Previously, TDCJ read that policy to bar any audible contact or audible prayer. Now, it reads that same policy to allow contact and audible prayer. Yet, TDCJ still maintains its position that such an interpretation is not required by RLUIPA or the Constitution. Even so, until a preliminary injunction issued, only months ago in the *Gonzales* case, TDCJ maintained the position that any handholding was an impermissible security threat.

TDCJ is now operating under an unwritten policy where prison officials may unilaterally decide whether to allow an inmate's requested accommodation. This practice constitutes an arbitrary method for interpreting its own policy; hence, the accommodation may be withdrawn at the will or caprice of any prison official at the last moment thereby avoiding judicial review.

The question of whether an injunction should issue stems from the fact that TDCJ does not have a policy in place that ensures that it will protect an inmate's rights during an execution. Barbee and other inmates have made a substantial showing that denying their religious requests in the execution chamber would violate their RLUIPA and constitutional rights. TDCJ argues that its practice and promise should be sufficient. Not so. An unwritten policy not only fails to guarantee protection of an inmate's rights—it fails to specify when discretion will be used to deny a religious accommodation. No inmate has notice as to which request or what conduct will fall outside such an unwritten policy. Specifically, neither the inmate nor the spiritual advisor has notice as to what behavior, speech, action, or circumstance may result in a denial or withdrawal of a promised accommodation.

## V. Conclusion

For the reasons discussed above, the Court **DENIES** the defendants' motion to dismiss **WITHOUT PREJUDICE**. The Court will issue an injunction by separate order.

It is so ORDERED.

SIGNED on November 3, 2022, at Houston, Texas.

_____
Kenneth M. Hoyt
United States District Judge