United States Courts Southern
District of Texas
FILED
11/11/2022
Nathan Ochsner, Clerk of Court

# United States Court of Appeals
# for the Fifth Circuit

No. 22-70011

United States Court of Appeals
Fifth Circuit
**FILED**
November 11, 2022
Lyle W. Cayce
Clerk

STEPHEN DALE BARBEE,

*Plaintiff—Appellee,*

*versus*

BRYAN COLLIER; BOBBY LUMPKIN; DENNIS CROWLEY,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3077

---

Before DENNIS, ELROD, and WILLETT, *Circuit Judges.*

PER CURIAM:*

Defendants appeal the district court's preliminary injunction ordering Defendants to enact a policy protecting all inmates' religious rights during capital punishment executions. This order that Defendants adopt a policy protecting all inmates' religious rights during executions was unwarranted

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

because it is not narrowly drawn to the Plaintiff requesting relief. Therefore, we VACATE the district court's preliminary injunction as overbroad.

## I.

In 2006, a Texas state jury convicted Plaintiff Stephen Barbee of capital murder, and the trial court sentenced him to death. *See Barbee v. Texas*, No. AP–75,359, 2008 WL 5160202 (Tex. Crim. App. Dec. 10, 2008) (affirming conviction and sentence), *cert. denied*, 558 U.S. 856. Both the state and federal courts denied habeas relief. *See Barbee v. Davis*, 728 F. App'x 259 (5th Cir. 2018) (affirming denial of habeas relief).

Since April 21, 2021, the Texas Department of Criminal Justice (TDCJ) has had a written policy which allows a spiritual advisor to be present within the execution chamber during the execution. This policy is silent as to whether the spiritual advisor may pray or touch the inmate. However, TDCJ denied such accommodations for several inmates. On September 8, 2021, the United States Supreme Court granted a petition for writ of certiorari in one such case, *Ramirez v. Collier*, to decide whether an inmate is entitled at the preliminary injunction stage to have a spiritual advisor pray and touch the inmate under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). *Ramirez v. Collier*, 142 S. Ct. 50 (2021).

On September 21, 2021, Plaintiff Stephen Barbee filed the instant litigation against the relevant directors of the TDCJ in the United States District Court for the Southern District of Texas. Barbee alleged that TDCJ refused to allow his spiritual advisor to pray and touch him while in the execution chamber, which Barbee alleged violated the RLUIPA and the First Amendment's Free Exercise Clause. The district court stayed Barbee's execution until TDCJ "allows his chosen spiritual advisor in the execution chamber, authorizes contact between Barbee and his spiritual advisor, and

allows his spiritual advisor to pray during the execution." The district court then stayed Barbee's case pending the Supreme Court's decision in *Ramirez*.

On March 24, 2022, the Supreme Court decided *Ramirez*, holding the inmate in that case was entitled to a preliminary injunction ordering TDCJ to allow his spiritual advisor to pray and lay hands on him during the execution. *Ramirez v. Collier*, 142 S. Ct. 1264 (2022). After *Ramirez*, TDCJ agreed to allow Barbee's spiritual advisor to audibly pray, lay hands on Barbee, and to hold Barbee's hand during the execution. The Texas trial court then set Barbee's execution as November 16, 2022.

In the instant case, Defendants moved to dismiss Barbee's case as moot, attaching an affidavit by Bobby Lumpkin, Director of the Correctional Institutions Divisions of TDCJ, attesting to his agreement to Barbee's requests concerning his spiritual advisor. The district court ordered further briefing as to whether a preliminary injunction as opposed to dismissal would be more appropriate. Defendants filed supplemental briefs containing substantially similar arguments as before, while Barbee urged entry of an "order forbidding the execution without an official change of policy" in order to prevent a last-minute change in policy.

The district court denied the Defendants' motion to dismiss. In the same order, observing that because "TDCJ is now operating under an unwritten policy where prison officials may unilaterally decide whether to allow an inmate's requested accommodation . . . the accommodation may be withdrawn at the will or caprice of any prison official at the last moment," the district court found a preliminary injunction appropriate. The district court issued the following preliminary injunction:

> Texas [TDCJ] may proceed with the execution of Stephen Barbee on November 16, 2022, only after it publishes a clear policy that has been approved by its governing policy body that (1) protects an inmate's religious rights in the execution

chamber and (2) sets out any exceptions to that policy, further describing with precision what those exceptions are or may be.

Defendants filed an interlocutory appeal of the district court's order granting a preliminary injunction.

## II.

This court reviews a "district court's grant of a preliminary injunction ... for abuse of discretion." *Women's Med. Cty. of Nw. Hous. v. Bell*, 248 F.3d 411, 418-19 (5th Cir. 2001). "Findings of fact are reviewed only for clear error; legal conclusions are subject to *de novo* review." *Id.* at 419. "Issuance of an injunction rests primarily in the informed discretion of the district court. Yet injunctive relief is a drastic remedy, not to be applied as a matter of course." *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1977) (internal citations omitted).

There is no doubt that Barbee is entitled to have his spiritual advisor pray and touch him in the execution room under *Ramirez*, as the circumstances are nearly identical. *See* 142 S. Ct. at 1275-82. However, that is not what the district court ordered; it went beyond the circumstances of Barbee's case and ordered the Defendants to enact a written policy on religious accommodation that would apply to all executions. The proper scope of the injunction is the relevant issue here.

"A district court abuses its discretion if it issues an injunction that 'is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue.'" *O'Donnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018) (quoting *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016)), *overruled on other grounds by Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022). The Prison Litigation Reform Act (PLRA) further limits what scope is appropriate in this case. *See, e.g., Native Am. Council of Tribes v. Weber*, 750 F.3d 742, 753 (8th Cir. 2014) (applying the

PLRA to an injunction under the RLUIPA affecting a prison's policies on tobacco use). The PLRA provides: "In any civil action with respect to prison conditions, . . . [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

We have held that "[t]he PLRA limits relief to the particular plaintiffs before the court." *Ball v. LeBlanc*, 792 F.3d 584, 599 (5th Cir. 2015). For example, in *Ball v. LeBlanc*, we vacated an injunction which ordered the implementation of air conditioning in the entire death row unit to abate an Eighth Amendment violation of excessive heat. *Id.* at 598-600. We concluded the district court "erred because it awarded relief facility-wide, instead of limiting such relief to [the particular plaintiffs] Ball, Code, and Magee." *Id.* at 598. We noted that "[t]his is not a class action; Ball, Code, and Magee are the only plaintiffs before the court. As a result, any relief must apply only to them, if possible." *Id.* at 599.

Although not citing the PLRA, we have also vacated an injunction similar to the one in this case which mandated a prison reduce a policy to writing. *Gates v. Cook*, 376 F.3d 323, 338-39 (5th Cir. 2004). In *Gates v. Cook*, the district court ordered the state department of corrections to "reduce a general preventive maintenance schedule and program to writing" in order to abate conditions in death row found to be unconstitutional under the Eighth Amendment. *Id.* at 338. We vacated the injunction because "[w]hile federal courts can certainly enter injunctions to prevent Eighth Amendment violations, they are not to micromanage state prisons." *Id.* at 339 (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). The district court had already "entered injunctions to directly remedy each of the complained-of conditions that rise to the level of an Eighth Amendment violation," and the plaintiff "cited no case that supports the proposition that the trial court can further affect the

internal operations of [the department of corrections] by requiring it to produce a writing preventive maintenance program to which it will adhere." *Id.* We reasoned that "[t]he additional requirement of a written preventive maintenance program, while desirable, [was] not independently supported by additional conditions that constitute an Eighth Amendment violation, and it [could] []not stand." *Id.*

This approach is consistent with the Supreme Court's instructions in *Ramirez*, 142 S. Ct. 1264. As explained, in *Ramirez*, the Supreme Court addressed a nearly identical claim under the RLUIPA to have a pastor pray and lay hands on the inmate during the execution and held that, under the circumstances, such claims warranted preliminary injunctive relief. *Id.* at 1284. The district court in this case focused on the Supreme Court's statement in *Ramirez* that "[i]f States adopt clear rules in advance, it should be the rare case that requires last-minute resort to the federal courts." *Id.* at 1283. However, this statement was not a requirement on states but a recommendation on how to achieve "timely resolution of [RLUIPA] claims" within the prison grievance system and thus avoid last-minute federal court litigation. *Id.* On the other hand, when cases do reach the federal courts and "relief is appropriate under RLUIPA, the proper remedy is an injunction ordering the accommodation." *Id.*

Turning to the circumstances of this case, the district ordered the Defendants to "publish a clear policy that has been approved by its governing policy body that (1) protects an inmate's religious rights in the execution chamber and (2) sets out any exceptions to that policy, further describing with precision what those exceptions are or may be." However, this "facility-wide relief" is improper under the PLRA because it goes beyond relief for Barbee himself. *See Ball*, 792 F.3d at 598–99. Barbee did not bring a class action; he sought only individual injunctive relief in his complaint.

While a written policy may be desirable, *see Gates*, 376 F.3d at 339; *Ramirez*, 142 S. Ct. at 1283, the available remedy for Barbee's RLUIPA violation "is an injunction ordering the accommodation," *see Ramirez*, 142 S. Ct. at 1283. As it stands, the preliminary injunction ordering the Defendants to enact a written policy on religious accommodation that would apply to all executions is overbroad and must be vacated. The district court may instead consider what relief specific to Barbee is consistent with *Ramirez* and is appropriate in this case.

## III.

For the foregoing reasons, we VACATE the district court's preliminary injunction as overbroad and REMAND for further proceedings consistent with this opinion. The mandate shall issue forthwith.